CITY OF KINSTON, A MUNICIPAL CORPORATION v. H. C. SUDDRETH.

(Filed 2 March, 1966.)

**Damages § 6—**

Where the person making an increased bid for municipal property deposits the required sum under a written contract that if he failed to comply with his bid the deposit should be forfeited as liquidated damages, and that the bidder should have no further rights in the property, and the city would be free to sell the prpoerty, *held*, the provision for the forfeit of the deposit as liquidated damages precludes the city from recovering in addition thereto any further loss sustained in the resale of the property. This result would not be affected if the forfeiture be deemed a penalty, since in this event the measure of damages is the actual loss not exceeding the penalty fixed.

MOORE, J., not sitting.

PLESS, J., and RODMAN, E.J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Parker, J.,* February 1965 Civil Session of LENOIR, docketed in the Supreme Court as Case No. 360 and argued at the Fall Term 1965.

Plaintiff appeals from a judgment sustaining defendant's demurrer to the complaint and dismissing this action. In brief summary, the complaint alleges:

In 1963, plaintiff City of Kinston (City) acquired a new City Hall. The City Council declared the old City Hall property to be surplus and advertised it for sale at public auction on September 11, 1963. At that time, Hardy-Harvey, Inc. and Fred I. Sutton became the last and highest bidders for the property at the price of $40,-100.00, subject to confirmation of the sale by the City Council. By resolution, the City Council confirmed the sale unless, prior to 5:00

p.m. on September 26, 1963, an increased bid of at least $2,000.00 should be received. It also required that the increased bid be "accompanied by a good faith deposit of $4,000.00, and a contract in form approved by the City Attorney of said City to guarantee the making of such raised bid at the resale."

Prior to the deadline, defendant raised the bid of Hardy-Harvey, Inc. and Fred I. Sutton from $40,100.00 to $42,100.00, and deposited with the City Clerk the sum of $4,000.00 and an executed contract "approved as to form by the City Attorney." It is attached to the complaint as Exhibit A. The contract provided that the City should immediately advertise the property for resale at public auction; that the sale would begin with defendant's bid of $42,100.00; and that if the sale were confirmed to him at that figure defendant would immediately pay the full purchase price. The contract contained this further provision:

> "That if the said party of the first part shall fail to so purchase and to comply with such bid, and to comply with the terms of this contract, that then the $4,000.00 so deposited with the City shall be forfeited to the City as liquidated damages, and the said party of the first part shall have no further rights therein or in said properties, and the City of Kinston shall thereafter be free to sell said properties in a manner selected by the City."

When the property was resold on October 18, 1963, defendant's bid was the only one received. He deposited with the Clerk an additional $210.00 to meet the advertised requirement that the successful bidder make a good-faith deposit of 10% of the amount of his bid. The City Council immediately confirmed the sale to defendant unless an increased bid should be filed within ten days. No such bid was filed. On November 15, 1963, defendant notified the City that he would not comply with his bid but, instead, he would forfeit his deposit of $4,210.00. The City resold the property at a third auction on December 4, 1963, at which time Fred I. Sutton, Jr. and E. W. Massey became the last and highest bidders at the price of $36,500.00, which was $5,600.00 less than defendant's bid at the second sale. No increased bid was thereafter received, and the City executed a deed to the purchasers or their assigns.

The prayer of the complaint is that the City recover of defendant. $1,390.00 — the difference between the $5,600.00 "loss" and $4,210.00, the amount of defendant's deposit.

Defendant's demurrer to the complaint was sustained. When plaintiff declined the opportunity to amend, the court dismissed the action, and plaintiff appealed.

*George B. Greene for plaintiff appellant.*
*C. E. Gerrans for defendant appellee.*

SHARP, J.   Defendant demurred on the ground that, in their contract, the parties had expressly fixed and limited the maximum amount of damages which the City could recover from him in the event he failed to comply with his bid; that he had the choice of performing or forfeiting; and that the City, therefore, can recover no more than the agreed amount which the parties had denominated "liquidated damages." Plaintiff's position is that the contract provision was not for liquidated damages, but for a penalty which the court will not enforce, thus permitting plaintiff to recover its *actual* damages.

At the outset, it is noted:

> "(T)he test of whether a *promise* to pay money is liquidated damages or a penalty usually arises in an action brought by the party injured to recover the agreed amount. Whether a *deposit* is liquidated damages is tested, however, by an action by the party who has broken the contract, to get the court to give back to him the money he has parted with or so much of it as remains after satisfying the loss." McCormick, Damages § 153 (1935).

The plea that a sum stipulated to be liquidated damages is in reality a penalty is ordinarily a defensive one — a shield to protect a defendant from an absurd or oppressive claim which is entirely disproportionate to the actual damage he has caused. We apprehend that it is rare indeed that a party — as here — attempts to use the plea offensively to collect damages in excess of the stipulated figure.

> "*Liquidated damages* are a sum which a party to a contract agrees to pay or a deposit which he agrees to forfeit, if he breaks some promise, and which, having been arrived at by a good-faith effort to estimate in advance the actual damage which would probably ensue from the breach, are legally recoverable or retainable . . . if the breach occurs. A *penalty* is a sum which a party similarly agrees to pay or forfeit . . . but which is fixed, not as a pre-estimate of probable actual damages, but as a *punishment,* the threat of which is designed to prevent the breach, or as *security* . . . to insure that the person injured shall collect his actual damages." McCormick, Damages § 146 (1935).

Liquidated damages may be collected; a penalty will not be enforced. 22 Am. Jur. 2d, Damages § 212 (1965).

It is not necessary for us to decide whether the sum, which the parties here have so designated, is actually liquidated damages. Conceding it to be a penalty, as plaintiff contends, the result in this case will be the same. If a provision denominated liquidated damages be deemed one for a penalty, "the measure of damages is compensation for the actual loss, *not exceeding the penalty named.*" *Wheedon v. Bonding Co.,* 128 N.C. 69, 71, 38 S.E. 255, 255. (Italics ours.) It seems quite apparent that defendant intended to limit the amount of damages which could be recovered against him in the event he did not purchase the property. Whatever the City may have intended, that was the effect of the contract which it accepted.

We hold that the contract limited defendant's maximum liability to $4,000.00. Defendant voluntarily forfeited the additional $210.00 which he later deposited. Although the contract here contained no such specific stipulation, the validity of provisions limiting the maximum amount to be recovered in the event of a party's breach of contract, leaving actual damages in a lesser amount to be established, is unquestioned.

"Contractual limitation of liability to an agreed maximum must be distinguished from a penalty or liquidated damages, though every valid agreement for liquidated damages operates as a kind of limitation. Aside from certain restrictions in the field of public utility law, chiefly relating to common carriers, if the agreed amount to which liability is limited is something more than a merely nominal sum, the validity of the provision has long been recognized." 5 Williston, Contracts § 781A (3d Ed. 1961) and cases therein cited.

The judgment of the court below sustaining the demurrer and dismissing the action is

Affirmed.

MOORE, J., not sitting.

PLESS, J., and RODMAN, E.J., took no part in the consideration or decision of this case.