C. A. KNUTTON, T/A REID MUSIC COMPANY v. JAMES E. COFIELD, T/A COFIELD RESTAURANT.

(Filed 27 March 1968.)

1. **Appeal and Error § 45—**

Exceptions and assignments of error not brought forward and discussed in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

2. **Trial § 57—**

When trial by jury is waived, the court is required to give its decision in writing with its findings of fact and conclusions of law stated separately, G.S. 1-185, and its findings have the force and effect of a jury verdict and are conclusive on appeal if supported by evidence, even though the evidence may sustain a finding to the contrary.

3. **Trial § 56—**

Where a jury trial is waived, the weight and credibility of the evidence are for the trial judge.

4. **Monopolies § 2—**

A contract whereby plaintiff and defendant jointly undertake to provide a coin-operated phonograph for the use of patrons in defendant's restaurant, the plaintiff agreeing to furnish and service the machine and the defendant agreeing to furnish the space and the cost of electricity, is not a contract for the sale of goods, wares or merchandise within the contemplation of the statutes against restraint of trade. G.S. 75-1, G.S. 75-2, G.S. 75-5(b)(2).

5. **Damages § 7—**

Liquidated damages may be collected; a penalty will not be enforced.

6. **Same—**

A stipulated sum is for liquidated damages (1) where the damages which the parties might reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and, (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach or is reasonably proportionate to the damages which have actually been caused by the breach.

7. **Same—**

A provision in a contract for the installation of a coin-operated phonograph that in the event the store proprietor breached the contract the owner of the phonograph might recover a sum equal to the proprietor's average weekly profit prior to the breach, multiplied by the number of weeks remaining under the contract, is a provision for the payment of liquidated damages and not penalty.

8. **Same—**

Liquidated damages may be recovered in the event of a breach, notwithstanding no actual damages are suffered.

**9. Same—**

The effect of a provision for liquidated damages is to substitute the amount agreed upon as liquidated damages for the actual damages resulting from breach of contract, and the recovery must be for the stipulated amount.

**10. Contracts § 1—**

Ordinarily, when parties who are on equal footing and are competent to contract enter into an agreement on a lawful subject, and do so fairly and honorably, the law will not inquire as to whether the contract was good or bad, wise or foolish.

BOBBITT, J., dissenting.

SHARP, J., joins in dissenting opinion.

APPEAL by defendant from *Copeland, S.J.,* April 1967 Session HERTFORD Superior Court.

Plaintiff alleged in summary as follows:

1. That plaintiff resides in Hertford County and defendant resides in Bertie County, North Carolina.

2. That on 26 June 1963 plaintiff and defendant executed a contract for the installation of an electric phonograph in defendant's place of business, providing in pertinent part as follows:

(a) Plaintiff agreed to install in defendant's premises ready for use an electric automatic coin-operated phonograph and agreed to supply the records and to replace parts that might have been damaged by wear and tear.

(b) Defendant agreed to provide adequate and reasonable space in his premises for the installation of the phonograph in an area mutually agreed upon.

(c) Defendant agreed to keep the phonograph connected to an electric outlet in the premises and ready for operation at all times during business hours and pay for the electric current consumed in the operation of the machine.

(d) Defendant agreed that during the term of the contract or any renewal thereof he would not permit the installation in his premises of any other phonograph or other device for the reproduction of music, the privilege granted to the plaintiff in that respect being exclusive.

(e) Plaintiff and defendant agreed that the gross receipts

resulting from the operation of the phonograph should be shared equally.

(f)   The parties agreed that the life of the contract should be for a term of five years from its date.

(g)   The contract was subject to other terms and conditions contained on the reverse side, including Clause F as follows:

"Should the Location Owner disconnect the Phonograph or cause its removal or permit the installation of another Phonograph not owned or operated by Music Operator or otherwise fail promptly to perform any of the terms, covenants and conditions of this agreement, or any renewal thereof, then and in such event, at the option of the Music Operator, there shall become immediately due and payable, as liquidated damages and not as a penalty, the sum which the Music Operator would have received under the terms of this agreement for the balance of the term of the agreement. The amount payable to the Music Operator shall be computed as follows: The total receipts from the operation of the Phonograph, less the amount paid over to the Location Owner for the weeks preceding the breach by the Location Owner of the terms, covenants and conditions of this agreement, shall be totalled and divided by the number of weeks that have elapsed since the commencement date of this agreement and the sum resulting shall constitute the 'net average weekly payment.' This 'net average weekly payment' shall be multiplied by the number of weeks remaining under the terms of this agreement, and such resulting sum shall immediately become due and payable. It is further agreed that, upon default by the Location Owner of any of the terms, covenants or conditions of this agreement or any renewal thereof, the Location Owner's right to continue in possession of the Phonograph shall, at the option of the Music Operator, cease without notice or demand."

3.   That on 11 November 1964, without notice, defendant disconnected plaintiff's phonograph and caused another phonograph not the property of the plaintiff to be placed in defendant's place of business, known as the Cofield Restaurant; that defendant has refused to remove the additional phonograph and refused to reconnect the phonograph of the plaintiff, in breach of the terms and conditions of the contract.

4.   That from 26 June 1963 to 11 November 1964, a period of

seventy-two weeks, the gross receipts from plaintiff's phonograph in defendant's place of business were $2,254.30; that each party received one half of said amount; that plaintiff's average weekly payment from said machine was $15.65; that a total of 188 weeks remained on said contract at the time of its breach, and plaintiff is entitled to recover a total sum of $2,942.20 as liquidated damages pursuant to the terms and conditions of Clause F of the contract.

Defendant demurred to the complaint for that it does not state facts sufficient to constitute a cause of action "in that the plaintiff has failed to allege a cause of action and that the matter as set out in the complaint does not constitute a cause of action and is void, as the purported contract is against public policy and a restraint of trade, in violation of the laws of the State of North Carolina." The demurrer was overruled, and defendant filed answer denying the material allegations of the complaint. By way of further answer and defense, he denied signing the contract and averred that if he did sign it same was void as against public policy and in restraint of trade.

The parties waived a jury trial and consented that the matter be heard by Copeland, S.J., without a jury; whereupon, after hearing the evidence and arguments of counsel, he made findings of fact substantially in accord with the allegations of the complaint and concluded as a matter of law that the contract was valid and binding. Judgment was rendered that plaintiff recover liquidated damages in the sum of $2,968.52 with interest from 11 November 1964 at six per cent per annum until paid, and for costs.

Defendant excepted and appealed.

*Joseph J. Flythe and Carter W. Jones, Attorneys for defendant appellant.*

*Cherry & Cherry by Thomas L. Cherry, and Gillam & Gillam by M. B. Gillam, Jr., Attorneys for plaintiff appellee.*

HUSKINS, J. Defendant preserves three exceptions and assigns same as error. All others are deemed abandoned since they are not brought forward and discussed in the brief. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783 at 810; *State v. Strickland,* 254 N.C. 658, 119 S.E. 2d 781.

Defendant assigns as error the judgment overruling his demurrer. We are unable to find in the record proper any exception to support this assignment. An assignment of error is worthless unless it is based upon an exception duly taken in apt time during the trial and preserved as required by Rule 19(3) and Rule 21, Rules of Practice

in the Supreme Court, *supra; State v. Strickland, supra; Tynes v. Davis,* 244 N.C. 528, 94 S.E. 2d 496; *Barnette v. Woody,* 242 N.C. 424, 88 S.E. 2d 223. Even so, we have examined the complaint and in our opinion it states a good cause of action.

When trial by jury is waived and issues of fact are tried by the court, it is required to give its decision in writing with its findings of fact and conclusions of law stated separately. G.S. 1-185; *In Re Wallace,* 267 N.C. 204, 147 S.E. 2d 922; *Taney v. Brown,* 262 N.C. 438, 137 S.E. 2d 827. Its findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary. *Sherrill v. Boyce,* 265 N.C. 560, 144 S.E. 2d 596; *Priddy v. Lumber Co.,* 258 N.C. 653, 129 S.E. 2d 256; *Insurance Co. v. Lambeth,* 250 N.C. 1, 108 S.E. 2d 36; *Trust Co. v. Finance Corp.,* 238 N.C. 478, 78 S.E. 2d 327. The trial judge becomes both judge and juror, and it is his duty to consider and weigh all the competent evidence before him. *Hodges v. Hodges,* 257 N.C. 774, 127 S.E. 2d 567. He passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom. If different inferences may be drawn from the evidence, he determines which inferences shall be drawn and which shall be rejected. *Hodges v. Hodges, supra.*

There is plenary evidence in the record to support the findings of fact; hence, this Court is bound by them. Defendant in his own testimony admitted signing the contract and breaching it. He must therefore stand or fall upon his contentions that (1) the contract is void as against public policy because it is in restraint of trade and prohibited by G.S. 75-1, -2 and -5; or (2) that the "liquidated damages" clause of the contract is in fact a penalty and not enforceable.

G.S. 75-1 declares "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce" to be illegal. Any such act, contract, combination or conspiracy which violates the principles of common law is declared to be illegal by G.S. 75-2. Numerous particular acts are prohibited by G.S. 75-5, subsection (b) (2) thereof making it unlawful for any person to have any contract "[t]o sell any goods in this State upon condition that the purchaser thereof shall not deal in the goods of a competitor or rival in the business of the person making such sales." Hence, it becomes necessary to examine these statutes and determine their applicability, if any, to the contract between plaintiff and defendant in this case.

The statutes on monopolies and trusts, codified as Chapter 75 of

the General Statutes of North Carolina, are addressed to the sale and movement in commerce of goods, wares, merchandise and other things of value. Cases arising under them ordinarily involve a vendor and a purchaser. Thus the prohibited acts are usually connected with a purchase and sale, whereas the contract between plaintiff and defendant involves their joint undertaking to provide a coin-operated phonograph for the use of the patrons at defendant's restaurant, plaintiff to furnish and service the machine and defendant to furnish the space for its occupancy and pay for the electricity used to operate it. Profits were to be equally divided. In our opinion, this contractual arrangement does not involve a sale of goods, wares, or merchandise within the contemplation and scope of Chapter 75 of the General Statutes. Defendant was not engaged in the business of selling music machines and did not contract to refrain from selling machines of plaintiff's competitors. Hence, *Fashion Co. v. Grant,* 165 N.C. 453, 81 S.E. 606; *Shoe Co. v. Department Store,* 212 N.C. 75, 193 S.E. 9, and *Arey v. Lemons,* 232 N.C. 531, 61 S.E. 2d 596, relied on by defendant, are readily distinguishable.

In *Bradshaw v. Millikin,* 173 N.C. 432, 92 S.E. 161, defendant sold his barber shop to plaintiff and agreed that he would not engage in the barber shop business in the town of Hamlet for a period of two years; and in case of breach of his agreement, defendant agreed to pay $400.00 as liquidated damages. Upholding the contract the Court said:

> "Contracts in restraint of trade, like the one we are now considering, were formerly held to be invalid as against public policy, but the more modern doctrine sustains them when the restraint is only partial and reasonable. The test . . . is to consider whether it is such only as will afford a fair protection to the interests of the party in favor of whom it is given, and not so large or extensive as to interfere with the interests of the public."

In *Mar-Hof Co. v. Rosenbacker,* 176 N.C. 330, 97 S.E. 169, it was held that a contract, made in good faith for a valuable consideration, whereby the manufacturer of middy suits gave the plaintiff an exclusive agency to sell the suits in a named territory, was valid and enforceable and not within the inhibition of the antitrust statutes or of the common law. Accord, *Buick Co. v. Motors Corp.,* 254 N.C. 117, 118 S.E. 2d 559.

Finally, defendant contends that plaintiff seeks to recover a penalty erroneously denominated in the contract as liquidated damages. "Liquidated damages may be collected; a penalty will not be en-

forced." *Kinston v. Suddreth,* 266 N.C. 618, 620, 146 S.E. 2d 660, 662.

"The phrase 'liquidated damages' means a sum stipulated and agreed upon by the parties, at the time of entering into a contract, as being payable as compensation for injuries in the event of a breach. . . . [A] stipulated sum which is determined to be liquidated damages rather than a penalty is enforceable." 22 Am. Jur. 2d, Damages § 212.

"*Liquidated damages* are a sum which a party to a contract agrees to pay or a deposit which he agrees to forfeit, if he breaks some promise, and which, having been arrived at by a good-faith effort to estimate in advance the actual damage which would probably ensue from the breach, are legally recoverable or retainable . . . if the breach occurs. A *penalty* is a sum which a party similarly agrees to pay or forfeit . . . but which is fixed, not as a pre-estimate of probable actual damages, but as a *punishment,* the threat of which is designed to prevent the breach, or as *security* . . . to insure that the person injured shall collect his actual damages." McCormick, Damages § 146 (1935). Quoted with approval in *Kinston v. Suddreth, supra.*

Whether a stipulated sum will be treated as a penalty or as liquidated damages may ordinarily be determined by applying one or more aspects of the following rule: "[A] stipulated sum is for liquidated damages only (1) where the damages which the parties might reasonably anticipate are difficult to ascertain because of their indefiniteness or uncertainty and (2) where the amount stipulated is either a reasonable estimate of the damages which would probably be caused by a breach *or* is reasonably proportionate to the damages which have actually been caused by the breach." 22 Am. Jur. 2d, Damages § 214. This rule was generally followed in *Bradshaw v. Millikin, supra* (173 N.C. 432, 92 S.E. 161) where the Court stated:

> "In deciding whether the sum fixed by the contract as the measure of a recovery, if there is a breach, should be regarded as a penalty or as liquidated damages, the court will look at the nature of the contract, and its words, and try to ascertain the intentions of the parties; and also will consider that the parties, being informed as to the facts and circumstances, are better able than any one else to determine what would be a fair and reasonable compensation for a breach; but the courts have been greatly influenced by the fact that in almost all the cases the damages are uncertain and very difficult to estimate."

While early opinions tended to regard stipulations in contracts purporting to fix sums to be paid in the event of breach as penalties

rather than as liquidated damages, and courts were slow to enforce stipulated sums, "it is doubtful that there is any longer sufficient authority to support a rule that the courts tend to regard such provisions as penalties. In fact, some courts have given expression to the opposite rule and have said that the modern tendency is to look upon stipulated sums with candor, if not with favor." 22 Am. Jur. 2d Damages § 214; *Kothe v. R. C. Taylor Trust*, 280 U.S. 224, 74 L. ed. 382, 50 S. Ct. 142; *Wise v. United States*, 249 U.S. 361, 63 L. ed. 647, 39 S. Ct. 303. "Ordinarily, even a court of equity will not relieve against a stipulation for liquidated damages." 22 Am. Jur. 2d, Damages, *supra; Sun Printing and Publishing Association v. Moore*, 183 U.S. 642, 46 L. ed. 366, 22 S. Ct. 240.

Applying the foregoing principles of law to the contract before us, we are of the opinion that the terms of the agreement are within the principles under which such contracts are held to be valid and that the sum to be paid upon breach should be considered as liquidated damages and not as a penalty. The formula for ascertaining the amount of damages, contained in Clause F of the contract, affords a mathematical method of making certain that which otherwise is very uncertain. Furthermore, the result of such calculation is a reasonable estimate of the damages which would probably be caused by a breach as it appeared to the parties at the time the contract was made. In addition, absent Clause F there is no standard by which a jury could fix with any degree of certainty the amount of damages sustained by plaintiff by reason of the breach. "Where the damages resulting from a breach of contract cannot be measured by any definite pecuniary standard, as by market value or the like, but are wholly uncertain, the law favors a liquidation of the damages by the parties themselves; and where they stipulate for a reasonable amount, the agreement will be enforced." Hale on Damages, p. 133, quoted with approval in *Machine Co. v. Tobacco Co.*, 141 N.C. 284, 297, 53 S.E. 885, 889.

In light of these principles, defendant's exceptions and assignments of error are overruled. There is evidence to support the findings of fact and the authorities cited support the conclusions of law.

Appellant concludes his brief by saying: "Admittedly, there was a breach of the written agreement alleged by the plaintiff; but the damages awarded to the plaintiff in this case, if upheld, would not only compensate him for any loss suffered by the breach, but would enrich him to such an extent that he would reasonably hope that all of his contracts similar to the one in question would be broken." Even so, it is the general rule that the amount stipulated in a contract as liquidated damages for a breach thereof, if regarded by the

court as liquidated damages and not as a penalty, may be recovered in the event of a breach even though no actual damages are suffered. 22 Am. Jur. 2d, Damages § 234, citing *United States v. Bethlehem Steel Co.,* 205 U.S. 105, 51 L. ed. 731, 27 S. Ct. 450; *United States v. LeRoy Dyal Co.* (C.A. 3 N.J.), 186 F. 2d 460, cert. den. 341 U.S. 926, 95 L. ed. 1357, 71 S. Ct. 797; *Robbins v. Plant,* 174 Ark. 639, 297 S.W. 1027, 59 A.L.R. 1128; *McCarthy v. Tally,* 46 Cal. 2d 577, 297 P. 2d 981; *Parker-Washington Co. v. Chicago,* 267 Ill. 136, 107 N.E. 872; *Salem v. Anson,* 40 Ore. 339, 67 P. 190; *Kelso v. Reid,* 145 Pa. 606, 23 A. 323; *Mead v. Anton,* 33 Wash. 2d 741, 207 P. 2d 227, 10 A.L.R. 2d 588. Unless the provision for liquidated damages be regarded as a penalty and unenforceable, the effect of such clause in a contract "is to substitute the amount agreed upon as liquidated damages for the actual damages resulting from breach of the contract, and thereby [prevent] a controversy between the parties as to the amount of damages. . . . [T]he sum stipulated forms, in general, the measure of damages in case of a breach, and the recovery must be for that amount." 22 Am. Jur. 2d, Damages § 235, citing numerous cases from other jurisdictions. In this connection, plaintiff alleged he had received an average weekly payment of $15.65 for 72 weeks, and sued for that weekly amount during the remaining 188 weeks of the contract period, totalling $2,942.20. The trial judge found as a fact, supported by the evidence, that plaintiff's average weekly payment had been $15.79 and entered judgment for $2,968.52. ($15.79 x 188 weeks). This slight variation is not material. McIntosh, N. C. Practice and Procedure § 1288(1); *McCrillis v. Enterprises,* 270 N.C. 637, 155 S.E. 2d 281; *Dennis v. Albemarle,* 242 N.C. 263, 87 S.E. 2d 561.

Courts do not make contracts. As stated by Higgins, J., in *Roberson v. Williams,* 240 N.C. 696, 83 S.E. 2d 811, "Ordinarily, when parties are on equal footing, competent to contract, enter into an agreement on a lawful subject, and do so fairly and honorably, the law does not permit inquiry as to whether the contract was good or bad, whether it was wise or foolish."

In the trial below we find

No error.

BOBBITT, J., dissenting: I agree the demurrer was properly overruled and that Clause F of the contract is not void as violative of statutory provisions relating to restraint of trade. Moreover, I do not question the general statements in the Court's opinion relating to distinctions between "liquidated damages" and "penalty."

The judgment of the court below, and this Court's decision, is

predicated on an interpretation of Clause F which completely relieves plaintiff of any obligation, notwithstanding he has had possession and control of the electric "music machine" or "piccolo" during the period for which he seeks to recover from defendant, to minimize his damages by accounting for what he has received or by the exercise of due diligence should have received from the installation thereof in another or other locations. In my opinion, the provisions of Clause F when so interpreted provide for a penalty rather than for liquidated damages; that the judgment of the court below was entered under misapprehension of the applicable law; and that the cause should be remanded for determination of plaintiff's damages in accordance with the rules ordinarily applicable in determining damages for such breach of contract.

Evidence offered by plaintiff tends to show he discovered on November 11, 1964, that his electric "music machine" or "piccolo," located in defendant's restaurant-dance hall, had been disconnected; that plaintiff removed it from defendant's place of business on or about November 16, 1964, and thereupon placed it in the place of business of Eli Cofield, defendant's brother, who operated "a sort of combination pool room and beer parlor"; and that an older machine, theretofore located in Eli's place of business, was removed and taken to plaintiff's shop. The agent for plaintiff who handled these matters testified the older machine did not need repairs or service and that he was "almost sure we put it out some place later." There was evidence that defendant and his brother Eli had adjoining places of business "right there at Midway in Bertie County."

Upon waiver of jury trial, the issues of fact were determinable by the trial judge. It does not appear that defendant's counsel undertook to explore and develop evidence with reference to what plaintiff actually received or by the exercise of due diligence should have received from the operation of its machine in Eli Cofield's place or other places of business during the unexpired portion of defendant's contract with plaintiff. It would appear that any attempt to do so would have been futile in the face of the court's opinion that Clause F provided for "liquidated damages" and not a "penalty" and defined with precision a complete method for determining what plaintiff was entitled to recover in event of such breach. My dissent is directed to this interpretation of Clause F, an interpretation now accepted and approved by this Court.

Relevant general principles are set forth in the Restatement of Contracts, § 339, entitled, "Liquidated Damages and Penalties," which, in pertinent part, provides: "(1) An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a

contract and does not affect the damages recoverable for the breach, unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

In *Gorco Construction Company v. Stein,* 256 Minn. 476, 99 N.W. 2d 69, Matson, J., speaking for the Supreme Court of Minnesota, stated: "In determining the issue (whether a particular provision is one for a penalty or one for liquidated damages) neither the intention of the parties nor their expression of intention is the governing factor. The controlling factor, rather than intent, is whether the amount agreed upon is reasonable or unreasonable in the light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances." In an earlier Minnesota case, *Schommer v. Flour City Ornamental Iron Works,* 129 Minn. 244, 152 N.W. 535, the opinion states: "The law adopts as its guiding principle that the injured party is entitled to receive a fair equivalent for the actual damages necessarily resulting from failure to perform the contract and no more." Accord: *Jolley v. Georgeff,* 110 N.E. 2d 23 (Ohio).

Ordinarily liquidated damages consist of an amount fixed as of the date the contract is made as damage resulting from a breach thereof or a breach of some specific provision thereof. The word "liquidated" has been defined as follows: "A demand is not liquidated though it appears that something is due, unless it appears how much is due." Ballentine's Law Dictionary, Second Edition, p. 763. It is said that "(t)he term is applicable when the amount of the damages has been ascertained by the judgment in the action, or when a specific sum of money has been expressly stipulated by the parties to a bond or other contract as the amount of damages to be recovered by either party for a breach of the agreement by the other." Black's Law Dictionary, Fourth Edition, p. 468.

"The provision for the payment of liquidated damages founded upon a sum that is uncertain and unliquidated at the time that the agreement is entered into cannot be said to constitute liquidated damages as to the amount to be paid in the event of a breach of contract. A liquidated damages clause presupposes an agreement between the parties for the payment of a sum certain upon the breach of the contract. (Citation.)" *Frankel's Carpet Fashions, Inc., v. Abraham,* 228 N.Y.S. 2d 123.

Here, as in *Weinstein v. Griffin,* 241 N.C. 161, 84 S.E. 2d 549, discussed below, the contract provision does not fix a stipulated amount as damages resulting from a breach of any one or more of

the contract provisions. It purports to establish a method for determining the amount of damages different from the rule otherwise prescribed by law. In my view, the stipulated method imposes a penalty and therefore is unenforceable. Assuming its validity in determining what plaintiff would have received if the machine had remained in defendant's place of business, it cannot relieve plaintiff of the legal obligation to minimize his damage.

The lease considered in *Christie, Mitchell and Mitchell Co. v. Selz*, 313 S.W. 2d 352 (Texas), obligated the lessee to pay a rental of seventy-five dollars per month. The lessee surrendered the premises ten and one-half months before the lease term of two years expired. The lease contained the following provision: "Lessee shall nevertheless be liable to Lessor for the remaining balance then unpaid on such lease, at the rate of $75.00 per month as hereinabove specified, for the number of months then remaining in said term . . ., *and Lessee hereby expressly covenants to pay to Lessor such sum in such event at the time of surrendering up said premises,* . . ." (Emphasis by Massey, C.J., in his opinion for the Court of Civil Appeals of Texas.) Based thereon, the trial judge granted summary judgment for $787.50. The evidence disclosed that three months and ten days after lessee surrendered possession, the lessor rented the same premises to a third party as tenant and received substantial rentals from the new tenant. It was held that the contract provision on which the lessor relied, if and when construed as relieving the lessor of an obligation to account for the rentals received from the new tenant, provided for a penalty rather than liquidated damages. The judgment of the trial court was reversed and the cause remanded.

In *Weinstein v. Griffin, supra,* the factual situation was quite different. There, the lease stipulation provided for the recovery by the lessor of the difference between the reasonable rental value and the rent provided in the contract during the unexpired portion of the term of the lease. This provision was treated by this Court as a stipulation for liquidated damages. The basis of decision is indicated by this excerpt from the opinion: "While liquidated damages, if in the nature of a penalty, are not favored (*Crawford v. Allen*, 189 N.C. 434, 127 S.E. 521), the liquidated damages fixed in the contract are not less favorable to the defendants than the rule of law would impose in the absence of any provision for liquidated damages." In *Weinstein*, it was stipulated that, if the premises were surrendered during the term, the rental for the unexpired portion of the term was to be reduced by the *reasonable rental value* of the premises during this period rather than by what the lessors, by the exercise of due diligence, could obtain by a rental thereof. Although the evidential

approach was different, there would be little variance, if any, in the result reached *by these methods of minimizing* the lessee's damages.

In *Melodies, Inc., v. Mirabile*, 179 N.Y.S. 2d 991, the contract related to the installation of "music service" in the defendant's bar. The plaintiff alleged and offered evidence tending to show the defendant breached the contract by discontinuing the service. Paragraph 10 of the contract provided: "10. Any act by the second party (defendant) causing an interruption, cessation or limitation of the full use of the equipment in accordance with the terms of this agreement shall be deemed a repudiation of this agreement by the second party. In such event, it is agreed that the measure of damages sustained by the first party . . . shall be the total original cost of installation as set forth in Exhibit 'B' *plus* a sum equal to the average return per week to the first party (plaintiff) up to the happening of such event from the equipment installed pursuant to this agreement, multiplied by the number of weeks remaining under the terms of this agreement or any renewal thereof." (Our italics.) Plaintiff offered evidence that its gross collections the year and five months the contract was in operation amounted to $2,383.15 and that the average weekly collection for the same period was $33.09. The court, in a trial without jury, awarded damages in the amount of $2,000.00, the jurisdictional limit. On appeal, it was held "that Paragraph 10 of the contract, conditioned as it was, constituted a penalty." The finding as to damages was reversed and the cause was "remitted" for a new trial "on damages."

In *Unit Vending Corporation v. Tobin Enterprises*, 194 Pa. Super. 470, 168 A. 2d 750, a similar factual situation was considered. The gist of the decision is accurately stated in this portion of the first headnote in the Atlantic Reporter, *viz.:* "Provision in agreement for location of cigarette vending machine that in event of breach or imminent breach by proprietor, operator might recover balance of loan made to proprietor *and* sum equal to operator's average profit prior to breach multiplied by months remaining in unexpired term, plus collection fees, was penalty . . ." (Our italics.) The opinion of Ervin, J., citing Restatement, Contracts, § 339, states: "If the amount of damages assessed is subsequently adjudged unreasonable in the light of either anticipated or actual harm, the contractual provision will be voided as a penalty." The opinion also states: "The operator should not be compensated for any profits that it might have been able to obtain by placing the machine in another location. It had the duty to minimize its damages by so doing if this were possible."

Where a stipulation as to damages recoverable in the event of a breach of contract is construed a penalty and not an agreement as

to liquidated damages, the party claiming damages may recover only such compensatory damages as he may be able to prove. *Jolley v. Georgeff, supra;* 25 C.J.S., Damages § 116(b), p. 1105; 22 Am. Jur. 2d, Damages § 235, p. 321.

I find no decision upholding as a valid "liquidated damages" provision a stipulation similar to that contained in Clause F as construed by the trial judge and now by this Court. The only decisions I have found involving closely analogous factual situations are set forth above.

SHARP, J., joins in dissenting opinion.