GENERAL BUSINESS SERVICES, INC.,
Plaintiff,

v.

Silas FLETCHER, Sr., d/b/a General
Business Services, Route 1, Box 90,
Gatesville, North Carolina, Defendant.

Civ. A. No. 603.

United States District Court,
E. D. North Carolina,
Elizabeth City Division.

Nov. 28, 1969.

Hall & Hall, Elizabeth City, N. C.,
Jeffrey L. Gardy, Suffolk, Va., Bryn
Ostby, Alexandria, Va., for plaintiff.

Silas Fletcher, Sr., pro se.

MEMORANDUM OPINION

KELLAM, District Judge (under
designation).

By written agreement of January 2,
1967, Silas Fletcher, Sr., the defendant,
became an "Area Director" of the plain-
tiff company in a designated geographi-
cal area of North Carolina for the pur-
pose of providing certain accounting and
bookkeeping services for subscribers
which the Area Director might obtain.
It appears that the General Business
Services, Inc. [hereafter "GBS"] is en-
gaged in accounting and tax services and
for such has prepared a system of main-
taining business records. An Area
Director enters into a contract with
"GBS" to provide these services in the
field and to use the systems developed
for this purpose. The contract specifies
the financial arrangement under which
both "GBS" and the Area Director share
in the fees paid by subscribers of the
services.

By letter of September 19, 1968, the
President of "GBS" informed the defend-
ant that effective October 19, 1968, his
association as an Area Director was

terminated pursuant to Section 15 of the contract, [See copy attached as appendix] for violations which included failure of the defendant to attend group training sessions and seminars, preparation of income tax returns for subscribers which is expressly prohibited in the contract, and failure to obtain a listing in the telephone directories used in the area served.

After termination of the contract, the plaintiff instituted this action alleging that the defendant following termination (1) was using the "GBS" system of records, (2) had failed to register new subscribers with the company, (3) was continuing to hold himself out after October 19, 1968, as a representative of "GBS", (4) was using forms of a similar nature with the designation thereon of "UBS" rather than "GBS", and (5) was in competition in violation of the non-competition clause of the contract. The plaintiff seeks a permanent injunction, award of the contract's liquidated damages sum in the amount of $5,000.00, and punitive damages. A preliminary injunction against the defendant was entered by Judge John D. Larkins, Jr., on March 17, 1969.

At the trial the defendant was represented per se. He was advised at the pre-trial conference of the complexity of the issues, of the difficulty of properly presenting evidence, examining witnesses, and of complying with the rules of evidence in a trial, and that, therefore, he might be better enabled to present his defense with counsel. The matter was heard without a jury.

Officials of the plaintiff company testified as to the grounds and incidents which led to the termination of the contract. The evidence established that in October, 1968, a subscriber had in his possession a system furnished him by the defendant but unregistered with "GBS"; that in late October, 1968, the defendant was still keeping his business records under the "GBS" system; and that subscribers to plaintiff, serviced by the defendant, were using forms marked "UBS".

The defendant, in his argument, based his defense on his allegation that "GBS" itself had breached the contract by not providing income tax return services to subscribers. He furthermore charged that the plaintiff was taking undue advantage of its subscribers by not providing the services due and that "the little people of North Carolina" were the "victims."

If the subscribers to the services of "GBS" in good faith have a cause of action, the courts of the land are available to them and they would be advised to seek any remedy which may be theirs. This holds true for the defendant as well. However, these issues are not before the court at trial. The sole question is whether the plaintiff has proved the allegations of the complaint and, if so, to what relief and damages it is entitled.

The record is clear that defendant's contract was terminated for good cause, and following termination, defendant continued to conduct himself as an Area Director of "GBS" and used the "GBS" system with its accompanying forms or those strikingly similar thereto.

As for the defendant's counterclaim, it is dismissed, no evidence whatsoever having been presented by him to substantiate it.

Plaintiff is entitled to a permanent injunction against the defendant.

Section thirteen of the contract provides for liquidated damages in the event that the non-competition provisions are breached by the Area Director. While such clauses in contracts have not always received the favor of the courts, particularly if in the form of a penalty, it appears that the Supreme Court of North Carolina holds such clauses valid if for the purpose of an award for damages and not solely as a penalty. Knutton v. Cofield, 273 N.C. 355, 160 S.E.2d 29 (1968).

By virtue of the plaintiff having proved to the satisfaction of the Court that the defendant violated the contract, it is entitled to damages for the actions of the defendant in continuing to use the systems of "GBS".

The Court sees no necessity of awarding the plaintiff punitive damages.

It is therefore ordered, that:

(1) The defendant, Silas Fletcher, Sr., his agents, servants, employees, attorneys, and all persons in concert and participation with him, be and are permanently restrained and enjoined from using in connection with accounting, record keeping, or tax counselling business services the name "General Business Services", or the mark "GBS", or any colorable imitation thereof, or from unfairly competing with the plaintiff in any manner whatsoever, and that all instruments, if any, in the custody of the Court under the provisions of the preliminary injunction issued on March 17, 1969, be redelivered to the plaintiff.

(2) The defendant, Silas Fletcher, Sr., his agents, servants, employees, attorneys, and all persons in concert and participation with him, be and are permanently restrained and enjoined from further holding himself or themselves out to the business public as doing business under the name of "General Business Services" or "GBS", or by any other name, style or mark which is confusingly similar thereto.

(3) This injunction is not to be a restraint or interference with the defendant's practice as an accountant.

(4) The sum of $5,000.00 is hereby awarded the plaintiff as damages caused by the actions of the defendant.

(5) The plaintiff shall be entitled to $1,000.00 as reasonable attorneys' fees, together with the cost and expense of maintaining this action as taxed by the Clerk.

(6) Copy of this Order be forwarded to all counsel and to the defendant.

APPENDIX

## APPOINTMENT OF AREA DIRECTOR

THIS AGREEMENT, made as of the 2nd day of January, 1967, by and between GENERAL BUSINESS SERVICES, INC., a Maryland corporation, with its principal office and place of business at 7401 Wisconsin Avenue, Washington, D.C. 20014 (hereinafter referred to as the "Company") and Silas Fletcher, residing at Route # 1, Box 90, Gatesville, North Carolina (hereinafter referred to as the "Area Director");

WITNESSETH:

WHEREAS, the Company is in the business of selling annual service subscriptions through franchised distributors who purchase such subscriptions for resale to Subscribers; and

WHEREAS, Silas Fletcher is desirous of being appointed by the Company as one of such distributors to be known as an "Area Director."

NOW, THEREFORE, the parties mutually agree as follows:

### 1. *Appointment*

The Company hereby appoints the Area Director as the exclusive and sole distributor for the territory described in Addendum # 1 (hereinafter referred to as the "Territory") for a period two (2) years from the date of this Agreement.

The Area Director, providing he has fulfilled the conditions of this appointment, shall be reappointed for succeeding two (2) year periods upon payment of a fee of Ten Dollars ($10.00) for each renewal.

### 2. *Payment*

Upon the execution of this Agreement and acceptance by the Company, the Area Director will pay to the Company the sum of Five Thousand Five Hundred Dollars ($5,500.00).

### 3. *Training and Assistance*

(a) The Company will maintain a Training Institute for the training of Area Directors and their Associates. The Company will pay all of the expenses, including transportation, related to the Area Director's attendance at a Training Institute.

(b) The Company will also furnish, without charge, at least two (2) days of field training for the Area Director.

(c) During the term of this Agreement, the Company will also furnish to the Area Director, without charge, periodic followup assistance and instruction as the Company deems necessary or appropriate to assist the Area Director in developing his business. The Area Director will participate and cause any Associate of his to participate in all training programs, seminars, and field training as provided by the Company.

### 4. *Subscriber Materials and Operating Supplies*

The Company will furnish the Area Director, without charge, after full payment and upon completion of the Area Director's Training Institute course, all of the materials set forth in Addenda # 2 and # 4.

### 5. *Preparation of Income Tax Returns*

The Area Director will not be responsible for, nor will he prepare, income tax returns. The income tax service rendered the Subscriber shall be the sole responsibility of the Company.

### 6. *Rebate Trust Fund*

The Company shall set aside the sum of Five Dollars ($5.00) out of its selling price of each subscription of General Business Services sold to the Area Director (exclusive of the original inventory of Subscriber services furnished pursuant to Paragraph 4 above) and shall deposit the same with a bank of its selection in a separate trust account, until the first of the following events occurs:

(a) The amount of said deposits reaches a total of Five Thousand Five Hundred Dollars ($5,500.00), at which time the Company will withdraw that amount from said trust account and pay it to the Area Director.

(b) Five (5) years from date of this Agreement, at which time the Company will withdraw from said trust account and pay to the Area Director the then total of such deposits unless the Area Director requests the Company to continue making such deposits until a total of Five Thousand Five Hundred Dollars ($5,500.00) has been deposited. In the event such extension is requested, the Company will continue to make such deposits until a total of Five Thousand Five Hundred Dollars ($5,500.00) has been deposited, at which time the Company will withdraw from said trust account and pay to the Area Director said sum of Five Thousand Five Hundred ($5,500.00) Dollars.

Said trust account shall be at all times under the complete control of the Company. In the event of termination, the Company will be entitled to withdraw and retain all amounts deposited. The Company shall be entitled to all interest earned thereon (and may withdraw the same periodically) and shall pay all expenses in connection therewith.

The provision for refund of the purchase price by setting aside Five Dollars ($5.00) on each General Business Services subscription purchased shall not be included in any renewal of this Agreement if the minimum purchase requirements listed in Paragraph 10 have not been met.

### 7. *Insurance*

The Company will provide group life insurance coverage for the Area Director in the face amount of Ten Thousand Dollars ($10,000.00) and will pay the premium costs thereof for the first six (6) months of coverage. Effective date of this insurance is to be the date of this Agreement.

### 8. Trade Name Rights

The Area Director, for the term of this Agreement, has the right to use and, unless otherwise instructed by the Company, will use the trade name "General Business Services." The Area Director agrees to register with appropriate governmental authorities and to obtain a telephone listing as "General Business Services" in the Territory.

### 9. Associates

The Area Director will cause any Associate appointed by him to execute a standard Associate Agreement with a copy being forwarded immediately to the Company for acknowledgment and approval.

The Area Director, at his sole and complete expense, will require the Associate Director to attend, as soon after his appointment as is convenient to the Company, a one (1) week training session at the Company's Training Institute.

The Area Director will not permit other persons to sell General Business Services subscriptions in his territory unless they are properly appointed Associates who have attended the Training Institute.

### 10. Minimum Purchase Requirements

Commencing with the seventh (7th) calendar month following attendance at the Training Institute, the Area Director will purchase from the Company at least the following quantities of General Business Services subscriptions for both new and renewal Subscribers:

First two (2) calendar quarters .................. 10 per quarter
Next four (4) calendar quarters ................. 15 per quarter

Minimum purchase requirements per calendar quarter under renewals of this Agreement will be as follows:

Third year ................................. 20 per quarter
Fourth year ................................ 25 per quarter
Fifth year ................................. 30 per quarter
Sixth year ................................. 35 per quarter
ALL subsequent years .........................150 per year

The purchase price of the subscriptions will be established by the Company. A thirty (30) day advance notice will be given the Area Director in the event of a change of purchase price. The price list currently in force is attached as Addendum # 3. All orders by the Area Director shall be on forms furnished by the Company, and all orders will be shipped freight prepaid.

Purchases during any one (1) of the periods specified above in excess of the minimum for that period may be credited against the minimum specified for any subsequent period.

### 11. Registration Cards

The Area Director will complete and return to the Company within seven (7) days after installing a General Business Services subscription the numbered Registration Card furnished with each System. This Registration Card remains the property of the Company, and failure to return it as required is a violation of this Agreement.

### 12. Advertising and Promotion

The Area Director will obtain the Company's prior written approval of any advertising copy, promotional material, or other written or printed material used by him in promoting sales.

### 13. Restrictions

The Area Director shall not, within the territory or in any place within forty (40) miles of the outside boundary of the territory, at any time during the con-

tinuance of this Agreement, or for a period of one (1) year after the termination of this Agreement (regardless of the cause of such termination), divert away any employees or Area Directors of the Company; or directly or indirectly as principal, agent, employee or otherwise, engage in or be concerned with or interested in any business in competition with the Company. Further, the Area Director shall not, at any time during the continuance of this Agreement (except in pursuit of his responsibilities under this Agreement), or any time thereafter, divulge or use for his own purpose any confidential or business information relating to the business affairs of the Company.

The Area Director covenants and agrees that neither he, nor his successor or assigns, will have the right after termination of this Agreement to use the name "General Business Services"; "GBS"; or similar name which may confuse or tend to confuse the general public. The Area Director further covenants and agrees that violation of this restriction will result in stipulated damages against him in the amount of Five Thousand Dollars ($5,000.00), in addition to other rights and remedies available to the Company.

14. *Sale*

The Area Director may at any time sell his rights under this Agreement provided:

(a) The purchaser is approved by the Company in writing, which approval shall not be unreasonably withheld. This approval will be considered effective upon the execution by the purchaser and a Company officer of the standard Area Director Agreement then being issued by the Company to all new Area Directors.

(b) Prior to the execution of a standard Agreement with the new Area Director for the territory, the Company will be paid the sum of Two Thousand Seven Hundred Fifty Dollars ($2,750.00) as reimbursement for providing the new Area Director field training, transportation, Institute training and insurance, as described above, and the operating supplies listed in Addendum # 4.

(c) It is further agreed the Company will be paid One Thousand Eight Hundred Fifty Dollars ($1,850.00) as reimbursement for providing the new Area Director the Subscriber Materials listed in Addendum # 2.

### ADDENDUM #1—TERRITORY

The following counties in the State of North Carolina:

Area 23 x 58

- Northampton
- Hertford
- Gates
- Chowan
- Perquimans
- Pasquotank
- Camden
- Currituck

### ADDENDUM #2—SUBSCRIBER MATERIALS

31 General Business Services Subscriptions
3 Partnership Service Kits
3 Corporation Service Kits

## ADDENDUM #3—GENERAL BUSINESS SERVICES PRICE LIST

|  | Area Director Cost | Suggested Subscriber Cost |
|---|---|---|
| Sole Proprietor Subscription | $ 50.00 | $160.00 |
| Partnership Subscription | 100.00 | 250.00 |
| Corporation Subscription | 100.00 | 250.00 |

## ADDENDUM #4—OPERATING AND ADVERTISING SUPPLIES

### Operating

1 Operations Manual
1 Service Attache Case
500 Business Cards imprinted
250 Letterheads & envelopes imprinted
1 Address stamp
200 Address labels
1 Daily Work Planner
2 Purchase Order Pads
5 Subscriber Information Record Pads
800 Prospect Cards
250 Speed messages imprinted
25 Subscriber Change of Address
25 Cancellation Cards
50 Tip Record cards
50 Repair Sales Record #5100
50 Job Cost Record #5705
50 Sales by Employees #5102
50 Sales & Income #5803
50 Payroll Sheet #6502
50 Payroll Sheet #6503
50 Analysis Sheet #5802
50 Income by Unit #5101
50 Service Station Purchases #5700
50 Cost of Goods Sold # 5900

### Advertising

1500 Direct Mail pieces
50 Everyman's Income Tax Booklets
1 Business Analysis Interview Pad
10 Subscriber Presentation folders
100 Extra Profits folders
50 Business Counseling foldouts
50 Tax Service foldouts
50 Wall Street Journal reprints
50 Bar Management reprints
50 Rental Equipment Register reprints
25 Opinion Leader cards
1 Lobby Exhibit with
100 Reply cards #2015
1 set Subscriber Testimonial ltrs

---

Any Subscriber Materials returned by the terminating Area Director in usable condition will reduce this charge on a pro rata basis.

### 15. *Termination*

Except for purposes of resale described above this Agreement may be terminated only by the Area Director or by the Company as provided below.

(a) The Area Director may terminate this Agreement at any time by not requesting renewal, or by notifying the Company in writing of his desire to cancel this Agreement and by surrendering to the Company any items supplied or sold to him by the Company and still in his possession.

(b) The Company may terminate this Agreement by notifying the Area Direc-

tor in writing of such termination, but only if the Area Director has violated a provision of this Agreement and has been notified in writing of such default, and has failed to remedy such default within thirty (30) days of the giving of such notice.

### 16. *Estate*

This Agreement shall be considered as a property right of the Area Director to be included in his estate upon his death provided:

(a) The Company is notified by the Executor within thirty (30) days the name of the person responsible for fulfilling the obligations of this Agreement.

(b) The person so named must have attended a Company Training Institute or be willing to attend within ninety (90) days after the death of an Area Director.

Failure to continue operations as provided above will be considered an automatic request for termination under Paragraph 15(a) above.

### 17. *Waiver*

Failure of either party at any time to require performance by the other party of any provision hereof shall not be deemed a continuing waiver of that provision or a waiver of any other provision of this Agreement whether or not of the same or similar nature.

### 18. *International Creditors Alliance*

The Company stipulates that it has entered into an agreement with International Creditors Alliance, Inc., establishing its right to grant to the Area Director exclusive selling rights for International Creditors Alliance's copyrighted "MagicWrite" collection system. The Area Director may at his option elect to accept this grant by entering into an Area Director Agreement with International Creditors Alliance, Inc. This Area Director Agreement provides, among other things, that the selling rights extend to the same territory as shown in Addendum # 1 and that the Area Director will pay Five Hundred Five Dollars ($505.00) for the initial inventory and supplies.

### 19. *Modification*

This Agreement contains all the agreements, understandings, representations, conditions, warranties, and covenants by and between the parties hereto. Neither party shall be liable for any representation made unless expressly set forth herein, and this Agreement may not be modified or amended except in writing signed by both of the parties hereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the day and year first above written.

AREA DIRECTOR

GENERAL BUSINESS SERVICES, INC.

By *Silas Fletcher*

SILAS FLETCHER

GENERAL BUSINESS SERVICES, INC.

by *Browning*

Bernard S. Browning

President

[A1285]