JAMES P. CHRIS AND LINDA CHRIS, PLAINTIFFS-APPELLEES v. ALAN EPSTEIN AND JOYCE EPSTEIN, DEFENDANTS-APPELLANTS

No. 9215SC1221

(Filed 1 March 1994)

1. **Vendor and Purchaser § 8 (NCI3d)— breach of real estate sales contract—property sold one year later—evidence of sales price properly excluded**

    In an action by plaintiffs to recover their earnest money deposit where defendants counterclaimed for breach of contract, the trial court did not err in preventing defendants from introducing evidence of the actual sales price of the subject property one year after the alleged breach, since a seller is entitled to recover the difference between the contract price and the fair market value of the property at the time of the breach, plus any consequential damages which might have been within the contemplation of the parties at the time the contract was made, and evidence of resale value one year after the breach therefore was not relevant.

    **Am Jur 2d, Vendor and Purchaser §§ 492 et seq.**

2. **Vendor and Purchaser § 8 (NCI3d)— breach of real estate sales contract—ultimate price rule inapplicable in North Carolina**

    North Carolina has not adopted the "ultimate price" rule which permits the use of the difference between the ultimate resale price and the contract price as an alternative measure of damages; therefore, the trial court did not err in its instruc-

CHRIS v. EPSTEIN

[113 N.C. App. 751 (1994)]

tions on the measure of damages for breach of a real estate sales contract.

**Am Jur 2d, Vendor and Purchaser §§ 492 et seq.**

3. **Vendor and Purchaser § 8 (NCI3d)— breach of real estate sales contract—painting garage—renting furniture—damages not within contemplation of parties—damages not foreseeable**

In an action for breach of a real estate sales contract, the trial court did not err in excluding evidence of costs incurred by defendants to paint the sheetrock in their garage and to rent furniture for their new home so they could leave the subject house furnished in order to enhance its appearance, since these damages were not within the contemplation of the parties at the time the contract was made, and plaintiffs had no reason to foresee these damages as a probable result of their breach.

**Am Jur 2d, Vendor and Purchaser §§ 492 et seq.**

4. **Vendor and Purchaser § 8 (NCI3d)— earnest money deposit— no liquidated damages**

A $20,000 earnest money deposit did not serve as liquidated damages, since it was not set out in the parties' contract as the amount agreed upon which would serve as liquidated damages, and the language of the contract clearly allowed a seller to pursue other remedies for breach of contract in addition to forfeiture of a buyer's earnest money deposit.

**Am Jur 2d, Vendor and Purchaser §§ 492 et seq.**

Judge COZORT concurring.

Appeal by defendants from judgment entered 14 November 1990, *nunc pro tunc* 29 October 1990 by Judge D. B. Herring in Orange County Superior Court. Heard in the Court of Appeals 25 October 1993.

*Northen, Blue, Rooks, Thibaut, Anderson & Woods, by David M. Rooks, III, for plaintiffs-appellees.*

*Wood & Bynum, by B. Jeffrey Wood and Kenneth P. Carlson, Jr., for defendants-appellants.*

JOHNSON, Judge.

In June of 1988, after defendant Alan Epstein lost his job with General Electric, he sought other employment and was hired by a company in Ohio effective 28 July 1988. Defendants then placed their home on the market for sale. Soon after the home was on the market for sale, plaintiff James P. Chris executed a contract to purchase the home for $465,000.00, contingent upon his wife, plaintiff Linda Chris, giving written approval. Mrs. Chris agreed to the purchase, and the contract was finalized on 20 June 1988. Plaintiffs made a cash offer, deposited a $20,000.00 earnest money deposit with Goforth Properties, Inc., and scheduled the closing for 2 September 1988.

On 5 July 1988, the first of several inspections of defendants' home occurred pursuant to the contract to purchase. After the inspection, recommendations were made for changes to correct certain drainage and moisture problems. Defendants corrected these problems. However, on 29 August 1988, plaintiffs' attorney, David Rooks, III, faxed a letter to defendants' real estate agent, Martha Sayre, which notified defendants that plaintiffs were terminating the contract due to the drainage and moisture conditions and requested that plaintiffs' $20,000.00 earnest money deposit be returned.

Defendants' former counsel on 30 August 1988 notified plaintiffs that he would continue working toward a satisfactory closing and would make any repairs still needed to satisfy plaintiffs. The parties did not conduct the closing scheduled for 2 September 1988, and defendants did not return plaintiffs' $20,000.00 earnest money deposit.

Defendants then initiated many attempts to find another buyer for their home and mitigate their damages, including advertisements in newspapers and an international real estate magazine, listing in the area multiple listing service, open houses, catered luncheons for realtors at the home, private mailings to area professionals and business people, and continued upkeep and repairs to the home to ensure it was in the best possible condition for selling. Additionally, defendants hired E.M.A. Inc. Consulting Engineers of Raleigh, North Carolina, a "structural engineering" firm to rectify minor drainage problems discovered by E.M.A. Defendants then again asked plaintiffs to honor their contract; however, plaintiffs refused.

Defendants then moved to Ohio. Unable to afford paying for two homes, defendant Alan Epstein decided to quit his job in Ohio and attempted to find a job in North Carolina. When defendant's attempts to find a job in North Carolina were unsuccessful, he accepted a job in Chicago, Illinois which provided a relocation service to purchase their Chapel Hill home. Defendants sold their Chapel Hill home to the relocation service for $394,500.00, $70,500.00 less than plaintiffs' original offer.

Plaintiffs James P. Chris and Linda Chris filed suit against defendants Alan and Joyce Epstein on 5 October 1988, seeking the return of their $20,000.00 earnest money deposit. Defendants answered and counterclaimed for breach of contract. A jury trial was held before Judge D. B. Herring, Jr. in Orange County Superior Court. At trial, the court granted plaintiffs' motion in limine to exclude evidence of the home's $394,500.00 ultimate selling price, and ruled during trial that certain consequential damages from plaintiffs' breach could not be entered into evidence.

At the close of all of the evidence, the jury found that plaintiffs had breached the contract and awarded defendants $16,750.00 in consequential damages, the $20,000.00 earnest money deposit, costs, and interest. Defendants served their motion for a new trial on the issue of damages on 8 November 1990 and Judge Herring denied the motion by order entered 5 August 1992. Defendants gave notice of appeal to this Court on 26 August 1992. Plaintiffs cross appealed on 28 August 1992.

[1] Defendants argue in their first assignment of error that the trial court erred when it allowed plaintiffs' motion in limine, preventing defendants from introducing evidence of the actual sales price of the subject real property because this evidence is admissible under North Carolina law. We disagree.

Generally, a seller's damages for a buyer's breach of a real estate sales contract are those damages which the parties might reasonably have contemplated to be the probable result of a breach at the time they made the contract. *Johnson v. Sidbury*, 226 N.C. 345, 38 S.E.2d 82 (1946). A seller is entitled to recover the difference between the contract price and the fair market value of the property at the time of the breach, plus any consequential damages which might have been within the contemplation of the parties at the time the contract was made. *Taefi v. Stevens*, 53 N.C. App. 579, 281 S.E.2d 435 (1981), *modified*, 305 N.C. 291, 287 S.E.2d 898 (1982).

The issue for the jury in this case was whether there was any difference between the fair market value of the property at the time of the breach and the contract price. Evidence of the resale value one year after the breach was not relevant, as caselaw does not require the use of the resale price to formulate damages after a buyer has breached. Defendants propose that this Court should create a new standard of formulation for damages which would include the resale value. We do not deem it our place to change the formula for damages that has been set by precedent, where there has not been a plausible argument for such a change. We find the trial court correctly excluded evidence of the resale value.

[2] Defendants by their second assignment of error contend that the trial court erred when it instructed the jury on the measure of damages for breach of a real estate sales contract. More specifically, defendants contend the trial court should have instructed the jury on the "ultimate price" rule, permitting the use of the difference between the ultimate resale price and the contract price as an alternative measure of damages. We disagree.

In North Carolina, the seller is entitled to recover the difference between the contract price and the fair market value of the property at the time of the breach, plus any consequential damages which might have been contemplated by the parties at the time the contract was made. *Taefi*, 53 N.C. App. at 581, 281 S.E.2d at 437.

Defendants' evidence established a breach by plaintiffs, who were the buyers. Accordingly, the trial judge instructed the jury on the aforementioned measure of damages for breach of contract when a buyer breaches a real estate sales contract in North Carolina. Because North Carolina has not adopted the "ultimate price" rule proposed by defendants, the trial judge was correct in excluding it from its jury instructions. We find the trial court correctly instructed the jury on the law arising from the evidence presented at trial.

[3] Defendants argue by their third assignment of error that the trial court erred when it excluded evidence of defendants' cost to paint their garage and to rent furniture following plaintiffs' breach of the contract to purchase the subject real property because these actions are consequential damages under North Carolina law. We disagree.

It is well established that, to recover special or consequential damages in a contract action, plaintiff must prove that these damages were in fact caused by the breach, that the amount of such damages can be proved with a reasonable degree of certainty, and that the damages were within the 'contemplation of the parties' at the time they contracted.

*Stanback v. Stanback*, 37 N.C. App. 324, 327, 246 S.E.2d 74, 78 (1978) (citing Dobbs, Remedies, § 12.3, p. 798). "In other words, the injured party may recover all of the damages which were *foreseeable* at the time of the contract as a probable result of the breach either because they were a *natural* result or because they were a *contemplated* result of the breach." *Pipkin v. Thomas & Hill, Inc.*, 33 N.C. App. 710, 718, 236 S.E.2d 725, 731 (1977) (emphasis retained).

In the case at bar, defendants incurred costs from painting the sheetrock in the garage and renting furniture for their new home so they might leave the Chapel Hill house furnished in order to enhance the appearance of the property. We find that these damages were not within the contemplation of the parties at the time the contract was made. Additionally, we find that plaintiffs had no reason to foresee these damages as a probable result of their breach. As such, we find the trial court properly excluded evidence of defendants' cost to paint their garage and rent furniture.

By defendants' fourth assignment of error, defendants contend that the trial court erred when it failed to instruct the jury that consequential damages could or should include defendants' expenses in painting their garage and renting furniture following plaintiffs' breach of the contract to purchase. As we have determined that the costs including the painting of defendants' garage and renting furniture were not consequential damages, we find the trial court properly excluded defendants' proposed instructions.

[4] By defendants' fifth assignment of error, defendants contend that the trial court erred when it denied defendants' motion for a new trial on the issue of damages because of assignments of error I through IV. We disagree.

In the case *sub judice*, we have carefully examined defendants' assignments of error I through IV and have found no error by the trial court. As such, we overrule this assignment of error.

By plaintiffs' cross-assignment of error, plaintiffs contend that the trial court committed reversible error in entering judgment for defendants, awarding them the amount of plaintiffs' earnest money deposit in addition to the actual damages determined by the jury because the award amounted to a penalty. More specifically, plaintiffs argue that the $20,000.00 earnest money deposit served as liquidated damages which set the amount due in the event of a breach. We disagree.

The parties in the case at bar entered into a real estate contract comprised of the standard "Offer to Purchase and Contract" approved by the North Carolina Bar Association and the North Carolina Association of Realtors, Inc., and an addendum. The contract included standard provision 1 regarding earnest money deposits which states:

1. EARNEST MONEY: In the event this offer is not accepted, or in the event that any of the conditions hereto are not satisfied, or in the event of a breach of this contract by Seller, then the earnest money shall be returned to Buyer, but such return shall not affect any other remedies available to Buyer for such breach. *In the event this offer is accepted and Buyer breaches this contract, then the earnest money shall be forfeited, but such forfeiture shall not affect any other remedies available to Seller for such breach.* . . . (Emphasis added.)

Liquidated damages are defined as a stipulated amount which the parties agree will serve as damages upon breach. *Knutton v. Cofield*, 273 N.C. 355, 361-62, 160 S.E.2d 29, 34-35 (1968). The language of the contract clearly allows a seller to pursue other remedies for breach of contract in addition to forfeiture of a buyer's earnest money deposit. The $20,000.00 earnest money deposit did not serve as liquidated damages because it was not set out in the contract as the amount agreed upon which would serve as liquidated damages. We find no error in the jury's award. Plaintiffs' cross-assignment of error is overruled.

We find no error.

Chief Judge ARNOLD concurs.

Judge COZORT concurs with separate opinion.

NAEGELE OUTDOOR ADVERTISING v. CITY OF WINSTON-SALEM

[113 N.C. App. 758 (1994)]

Judge COZORT concurring.

I concur completely with the majority's opinion regarding plaintiffs' cross appeal. On the defendants' appeal, I am compelled to write that I concur with the majority only because I am bound by the precedent of prior opinions of this Court and our Supreme Court. In all fairness, defendants should prevail on their arguments regarding evidence of damages and instructions on damages. As the majority accurately points out, we are bound by precedent and are not in a position to change the rules. For that reason, I concur.