ROBERT N. ROSENSTEIN v. MECHANICS AND FARMERS BANK

---

WILMA C. ROSENSTEIN v. MECHANICS AND FARMERS BANK

No. 45

(Filed 1 December 1981)

Banks and Banking § 3— assignment of saving accounts—lack of consent by bank

A rule under the heading "Bankbooks" in a savings account passbook providing that "No assignment or transfer of the Bank Book need be recognized by the Bank unless it consents thereto, and a memorandum thereof entered in said Book" restricted only the assignment of the passbooks and not the accounts. Therefore, savings accounts in defendant bank were validly assigned by the depositors to plaintiffs although the bank did not consent to the assignments.

Rosenstein v. Mechanics and Farmers Bank

Justice MEYER concurring in the result.

Justice CARLTON dissenting.

Justice EXUM joins in the dissenting opinion.

PLAINTIFFS appeal as a matter of right under G.S. 7A-30(2) from a split decision of the North Carolina Court of Appeals, 51 N.C. App. 437, 276 S.E. 2d 710 (1981).

In the spring of 1975, C. Paul Roberts and wife, Becky M. Roberts, had on deposit with defendant Mechanics and Farmers Bank the sum of $138,339.84 in two savings accounts of $88,620.83 and $49,719.01, respectively. The accounts were comprised of funds deposited by Mr. and Mrs. Roberts as additional security for forty-five home mortgage loans made by the bank. The funds were not subject to immediate withdrawal. The deposits would be released by the bank and could be withdrawn when the principal balances of the mortgage loans were reduced to certain levels. In the event of foreclosure of any mortgage loan prior to the principal's reduction to the requisite level, the cash collateral deposited in the accounts for that specific loan would be applied to any deficiency.

On 22 May 1975, Mr. and Mrs. Roberts assigned the savings account with a balance of $49,719.01 to plaintiffs Wilma C. Rosenstein and her son, Dr. Robert N. Rosenstein, for the sum of $29,476.80. Mr. and Mrs. Roberts assigned the account containing $88,620.83 to Mrs. Rosenstein for $47,800.00 on 18 June 1975. These transactions were effected through written instruments under seal.

The defendant bank received a copy of both assignments in early July 1975. On 7 July 1975, John H. Wheeler, president of defendant bank, notified counsel for the plaintiffs that the bank refused to accept the assignments because, in defendant's opinion, the accounts were not "negotiable."

Defendant bank uses a standard passbook for its savings accounts. Throughout the passbook appears the printed language: "IT IS AGREED THAT THIS ACCOUNT IS OPENED SUBJECT TO THE RULES AND REGULATIONS OF THE BANK." The rules and regulations enumerated in the passbook are divided into six categories: "GENERAL," "DEPOSITS," "BANKBOOKS," "WITHDRAWALS," "INTEREST" and "TRANSFERS." Rule 11 under "BANKBOOKS" provides

that: "No assignment or transfer of the Bank Book need be recognized by the Bank unless it consents thereto, and a memorandum thereof entered in said Book."

After refusing to accept the assignment, defendant permitted Mr. and Mrs. Roberts and various third persons to withdraw funds from the accounts over a period of two and a half years, until the accounts were almost totally depleted. Three disbursements, totaling $10,700, were made to cover deficiencies resulting from foreclosure of three of the home mortgage loans.

Plaintiffs brought this action for recovery of the funds in the two savings accounts, less setoffs for foreclosure deficiencies. The trial court, sitting without a jury, made findings of fact and conclusions of law and awarded judgments to plaintiffs for the original amount of the accounts, plus accrued interest and less offsets paid out on the foreclosed notes and mortgages.

The Court of Appeals, with Judge Hedrick dissenting, reversed on grounds that the accounts were never validly assigned to the Rosensteins. Plaintiffs appealed under G.S. 7A-30(2).

*Nye, Mitchell, Jarvis & Bugg by Charles B. Nye; and Mount, White, King, Hutson, Walker & Carden, by Richard M. Hutson, II, for plaintiff appellants.*

*James B. Craven, III, for defendant appellee.*

HUSKINS, Justice.

The dispositive question posed by this appeal is whether the savings accounts were validly assigned to plaintiffs.

Bank deposits are assignable. *Lipe v. Bank*, 236 N.C. 328, 72 S.E. 2d 759 (1952). When an individual deposits money in a bank account, a debtor-creditor relationship is established between the bank and the depositor. "The debt thus created is subject to the rule that ordinary business contracts for money due or to become due are assignable." Id. at 331, 72 S.E. 2d at 761.

Defendant contends that this principle of assignability is subject to contrary agreement by the bank and the original depositor. The Court of Appeals agreed that a depositor cannot assign a bank account when his contract with the bank forbids transfer without the bank's consent. The court further held that

the contract between defendant bank and Mr. and Mrs. Roberts did in fact bar assignment without the bank's consent.

The contention that the accounts in this case were not assignable is based upon Rule 11 of defendant's passbook, which provides that: "No assignment or transfer of the Bank Book need be recognized by the Bank unless it consents thereto, and a memorandum thereof entered in said Book." The rule makes no mention of assignability of accounts. Rule 11 is listed in defendant's rules and regulations under the heading "BANKBOOKS." Defendant's rules and regulations have a separate category entitled "DEPOSITS." None of the rules listed under "DEPOSITS" restricts the assignability of deposits or accounts.

A straightforward reading of defendant's rules and regulations impels the conclusion that defendant has restricted the assignment of passbooks, but not accounts. Had defendant wished to restrict assignability of accounts, it could have done so in the same manner it reserved the right to refuse deposits. Rule 7 under "DEPOSITS" states: "The Bank may refuse any deposits and require any depositor to withdraw the whole, or any part of the same, upon 30 days' written notice mailed to the depositor at his or their address as same appears on the signature card; interest to be allowed only to the time of the expiration of such notice." Defendant need only to have included a rule, properly adopted by the board of directors, making assignment of accounts contingent upon the bank's consent. Defendant failed to do so.

The rule restricting the assignment of passbooks does not restrict the assignment of the underlying accounts themselves. The Court of Appeals found the distinction between accounts and passbooks to be "illusory" on grounds that a passbook is worthless other than as a record of the contract between the bank and the depositor. Apparently, no one would want a passbook by itself.

Such reasoning mischaracterizes the transaction at hand. Instead of the assignment of a passbook without an account, this situation involves the assignment of an account without necessarily delivering a passbook. This latter form of transaction, perhaps unlike the former, is not meaningless. A deposit may be validly assigned without the delivery of a passbook. *McCabe v. Union Dime Sav. Bank*, 150 Misc. 157, 268 N.Y.S. 449 (1934). Mr.

and Mrs. Roberts validly assigned their accounts to plaintiffs. The rule restricting assignment of passbooks was immaterial.

The question why parties would agree to the assignment of a passbook without assigning the underlying account is not before this Court. Neither is the question why a bank would wish to prevent such a transfer. Defendant in this case restricted such apparently meaningless transactions. "When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of construction, cannot reject what the parties inserted or insert what the parties elected to omit." *Weyerhaeuser Co. v. Light Co.*, 257 N.C. 717, 719, 127 S.E. 2d 539, 541 (1962). Defendant bank itself drafted this contract to become binding upon depositors without negotiation or bargaining on their part. The provisions of such a contract must be construed against the drawer. We will not interpret the purported restriction of assignment of passbooks to apply to assignment of accounts. "Courts do not make contracts. . . . [T]he law does not permit inquiry as to whether the contract was good or bad, whether it was wise or foolish." *Knutton v. Cofield*, 273 N.C. 355, 363, 160 S.E. 2d 29, 36 (1968).

We hold, as did the trial court, that plaintiffs are entitled to the funds in the two savings accounts at the time of the assignment plus interest as specified in the judgment of the trial court, less the $10,700 offset to cover deficiencies resulting from foreclosure of three home mortgage loans.

The decision of the Court of Appeals is reversed and the case remanded to that court for further remand to Durham Superior Court for reinstatement of the judgment of the trial court.

Reversed and remanded.

Justice MEYER concurring in result.

I concur in the result reached by the majority but for reasons different than those expressed by the majority. G.S. § 53-66 provides as follows:

> Any bank conducting a savings department may receive deposits on such terms as are *authorized by its board of directors* and agreed to by its depositors. *The board of direc-*

*tors shall prescribe* the terms upon which such deposits shall be received and paid out, and a passbook or other evidence of deposit shall be issued to each depositor containing the rules and regulations *adopted by the board of directors* governing such deposits. By accepting such book or such other evidence of deposit the depositor assents and agrees to the rules and regulations therein contained. (Emphasis added.)

It is clear beyond question that the terms governing deposits, in order to be valid, must be "authorized," "prescribed," and "adopted" by the board of directors. There is not a scintilla of evidence in the record before us that the rules contained in the passbook in question were ever authorized, prescribed or adopted by the board of directors. Two officers or employees of the bank testified that the rules had been in effect for years — one testifying that they had been in existence since 1948 or 1949. Such evidence in my view is evidence of the long-standing use of such rules and constitutes no showing whatever that the rules were authorized, prescribed or adopted by the board of directors. The Rosensteins demanded that the original books of the board of directors in which the rules and regulations were adopted be produced. They were not offered into evidence and there is no explanation in the record of why the bank could not have produced them, if they in fact existed. Contrary to the opinion of the Court of Appeals, I do not believe that failure to prove the vital fact of the authorization or adoption of the passbook rules by the board of directors was harmless.

Unless the passbook provisions prohibiting the transfer of the accounts without the bank's consent were valid, the transfer of those accounts by the Roberts to the Rosensteins was valid and enforceable against the bank. The bank received notice of the assignment and could have, at that time, taken appropriate action to freeze the accounts until the validity of the disputed assignments was determined. Although the bank notified the Roberts' attorney of its refusal to accept the assignments, it continued to make disbursements from the account to third parties. I believe that the bank acted at its peril in so doing, except for amounts deducted by the bank for collateral on foreclosures that produced deficiencies.

The provisions of G.S. § 53-66 specify in part that by acceptance of the passbook the depositor assents and agrees to the

rules and regulations contained therein. I would prefer not to forecast in this opinion that the bank "need only to have included a rule making assignment of accounts contingent upon the bank's consent." The question of the validity of such a provision, properly authorized by the board of directors and properly receipted for by the depositor, when it is but one of many small-print items in a passbook and is not discussed with or brought to the attention of the depositor and not within the contemplation of the parties, should await another day when it is before this Court on fully developed facts and briefed by the parties.

I agree with Judge Hedrick of the Court of Appeals that the evidence supports the critical findings and conclusions made by the trial judge and that his judgment should be affirmed.

Justice Carlton dissenting.

I respectfully dissent from the majority opinion. Unlike the majority, I cannot accept the argument that the Bank restricted the assignment of passbooks only and did not thereby restrict the assignment of the corresponding accounts. I agree with the Court of Appeals that the distinction between the passbook and the underlying account, with regard to the issue of assignability, is illusory.

The majority makes much of the use of the term "Bank Book" instead of "account" or "deposits" in the Bank regulation restricting assignability and in the placement of that regulation under the heading of "BANK BOOKS." In my opinion, the other rules and regulations printed under "BANK BOOKS" show beyond question that the "Bank Book" is tied to the account and is severable therefrom only in the event the Book is lost or stolen. For example, the Book "must be presented when money is deposited or withdrawn," and the Bank may refuse to enter into any transaction relating to that account if the Book is not presented. Additionally, Rule 12 provides that:

A duplicate pass book will be given the depositor for the amount to his or her credit as appears from the records of the Bank, if said book is lost, destroyed or stolen or mislaid, provided satisfactory indemnity is furnished the Bank to protect it against any claim which may, at any time, be made against it by any person coming into possession of the book

first issued. The Bank shall not be responsible for payment to any person producing the Bank Book, if the book be lost or stolen, unless and until written notice thereof shall have been given it.

These rules make clear that the sole function of the Bank Book is to represent the underlying account and that the Book has no inherent value or meaning in and of itself.

I would further argue that the headings used in the RULES AND REGULATIONS are merely illustrative and were not intended to have substantive effect. The Rules are listed consecutively from 1 to 17; each new heading does not begin with Rule 1. This shows that the headings were inserted as a convenient aid to locate rules on a particular subject and not as substantive limitations on the rules themselves. Thus, the *placement* of the rule restricting assignment under the heading "BANK BOOKS" is of no substantive significance.

A straightforward reading of the rules and regulations leads me to conclude that Rule 11 restricts the assignment of Bank Books *and the corresponding accounts*. To interpret this Rule as applying only to the Bank Book divorced from the funds in the underlying account is absurd. The Bank Book, in and of itself, has no inherent value to assign. Although the majority is correct in stating that an account may be validly assigned without the delivery of a passbook, citing *McCabe v. Union Dime Savings Bank*, 150 Misc. 157, 268 N.Y.S. 499 (1934), that case goes on to say that validity of the assignment must be determined by considering whether the failure to produce the passbook is excusable. This question is not the same as the one confronting us here. The question here is whether a provision restricting assignment of the passbook extends to the funds represented by the book. In my opinion, it does. The function of a passbook is to act as a memorandum of the account. As such, it represents the underlying funds. A provision restricting the transfer of the item which represents the funds, in my opinion, extends to the funds represented.

Justice EXUM joins in the dissenting opinion.