JOSEPH TATE, JR., PLAINTIFF v. ACTION MOVING & STORAGE, INC., AND MAYFLOWER TRANSIT CO., INC., D/B/A AERO MAYFLOWER TRANSIT CO., INC., DEFENDANTS

No. 8826SC1038

(Filed 19 September 1989)

**1. Pleadings § 37— defendant bound by allegation in answer**

Defendant was bound by the factual allegation in its answer that it agreed to store plaintiff's property, and defendant's denial of a storage agreement by its president in his deposition was of no import.

**2. Uniform Commercial Code § 37— "Household Goods Description Inventory"—warehouse receipt—defendant responsible as warehouseman**

The "Household Goods Descriptive Inventory" which was given to plaintiff when his goods were loaded was intended by defendant to serve as a warehouse receipt and defendant was responsible under N.C.G.S. § 25-7-201 for its actions as a warehouseman where the document issued by defendant listed each item picked up, its condition, the owner's name, the origin loading address, and was signed and dated by defendant's authorized agent and driver.

**3. Warehousemen § 1.1— failure of warehouseman to comply with statutes—conversion of plaintiff's goods**

Defendant warehouseman failed to comply with the requirements of N.C.G.S. § 25-7-210(3) and was properly held liable for conversion of plaintiff's goods where plaintiff sent defendant a check, instructed defendant to deduct more than enough to cover plaintiff's charges, and informed defendant

that plaintiff would arrange to have a different carrier pick up his goods from defendant; defendant admitted receiving plaintiff's letter; defendant refused to accept payment by plaintiff but instead continued to hold the goods, mounting up storage fees; and defendant subsequently sold the goods at auction where it was the only bidder.

**4. Damages § 7— plaintiff's forfeiture of property left with defendant more than six months — no liquidated damages clause — unenforceable penalty clause**

The agreement in this case which stated that, if plaintiff left his property with defendant for more than six months, it would become defendant's property was a penalty clause, not a liquidated damages clause, and as such was unenforceable, since the clause stated no fixed sum and there was no showing that the value of plaintiff's belongings was in any way related to any genuine pre-estimate of what defendant's damages would be in case of a breach by plaintiff.

APPEAL by defendant Action Moving & Storage, Inc. from *Snepp, Frank W., Jr., Judge.* Order entered 28 June 1988 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 13 April 1989.

Defendant Action Moving & Storage, Inc. (Action) appeals from entry of partial summary judgment against it which held that Action wrongfully converted plaintiff's personal property by selling plaintiff's belongings which were in Action's possession pursuant to an agreement between plaintiff and Action to transport the property to Liberia.

*Karro, Sellers & Langson, by Seth H. Langson, for plaintiff-appellee.*

*Hartsell, Hartsell & Mills, P.A., by Fletcher L. Hartsell, Jr., for defendant-appellant Action Moving & Storage, Inc.*

JOHNSON, Judge.

On 30 July 1987, plaintiff instituted this action against defendant Action, the local moving company, and defendant Mayflower Transit Company (Mayflower), the long distance mover, alleging breach of contract, unfair or deceptive trade practices, and conversion. Defendant Action's answer alleged affirmatively that plain-

tiff abandoned his belongings by express contractual provision and his subsequent refusal to pay storage and handling charges. Defendant Mayflower's answer denied personal knowledge of many of the events alleged by plaintiff to have occurred.

On 3 May 1988, plaintiff moved for partial summary judgment against both defendants as to the conversion charge based on its pleadings, depositions and other documents produced through discovery. On 27 June, in an order designated a "final judgment on the issues determined" entered because there was "no just reason for delay," the trial court granted plaintiff's motion as to defendant Action only. The order also held that defendant Action did not have actual authority to act on behalf of defendant Mayflower in selling plaintiff's goods and held there was a genuine issue of material fact as to whether Action had apparent authority. From the order finding it liable for conversion, defendant Action appealed in apt time.

In the following statement of facts we refer to the defendant local moving company as "Action" for the sake of brevity even though during the pertinent time period Action's full title on correspondence was "Action-Mayflower." This is only for convenience and expresses no opinion on the question of whether defendant Action had apparent authority to act on behalf of defendant Mayflower.

Viewing the evidence in the light most favorable to the non-moving party, defendant Action, the evidence tends to show the following: On 23 March 1984, plaintiff contacted defendant Action to ship his household belongings from Charlotte, North Carolina to Monrovia, Liberia. An employee of Action inspected the items for shipping and gave plaintiff a document entitled "Estimated Cost of Services" which quoted plaintiff an all-inclusive price $4,281.60 calculated on the basis that the items would require only three shipping crates. The parties agreed that plaintiff would pay $1,000.00 as a down payment and the balance before the goods were shipped. They also agreed that if the items were left in Action's possession for more than six months, they would become Action's property. The next day plaintiff requested Action to ship his goods. On 26 March 1984, Action loaded plaintiff's belongings, prepared a detailed inventory of them, and received plaintiff's check for $1,000.00.

Plaintiff then left Charlotte for Monrovia on or about 29 March 1984. Action stored plaintiff's belongings in its warehouse because

it had not received the balance to be paid before shipping. Plaintiff sent Action a letter from Monrovia dated 26 September 1984 which stated that he had been waiting to be advised of the final weight of his shipment. Plaintiff enclosed a check for $3,800.00 and requested information on the expected arrival of his belongings. On 24 October 1984, plaintiff sent Action another letter which stated in part the following:

> In reference to our telephone conversation on October 23, 1984, and my letter to your Company dated September 26, 1984, I like [sic] to make the following suggestion so as to eliminate further storage charges etc.:
>
> . . . .
>
> If you cannot ship my personal effects as I requested above, please deduct from the Four Thousand Eight Hundred ($4,800.00[)] Dollars that I have sent you Two Thousand Seven Hundred Eight ($2,708.20) Dollars and Twenty Cents which should cover your charges etc. and send me the balance of Two Thousand One Hundred Eight ($2,108.00) Dollars and I will make other arrangements to have my shipment picked up from your warehouse following confirmation.
>
> I do hope that you would be able to work along with me so as to resolve this matter soon and to eliminate other charges.

Action continued to hold the $4,800.00 without deducting for charges incurred as requested by plaintiff. Instead, Action wrote plaintiff on 29 October 1984 that the total charge for shipping his goods would be $8,452.24, leaving a balance due of $3,652.24 before Action would allow the goods to be shipped. The cost was itemized to include $709.80 for storage, $6,441.54 for shipping, and $1,300.90 for origin charges which include labor and materials for packing. Plaintiff apparently refused to pay the $8,452.24 amount. In a letter dated 27 February 1985, Action returned plaintiff's check for $3,800.00 and again asserted its claim for storage charges. Plaintiff continued to have numerous communications with both defendant Action and defendant Mayflower during 1985 concerning his belongings. On 17 May 1985, Action wrote plaintiff that it understood plaintiff wished to ship with a different carrier and it would release plaintiff's property to such carrier upon receipt of $1,350.96 balance due. Action later sent plaintiff two letters dated 9 and 11 October 1985. Both letters advised plaintiff that if

Action did not hear from plaintiff regarding the balance due by 31 October 1985, that Action would sell the personal property. On 20 and 27 December 1985, having received no payment from plaintiff, Action published a notice of the proposed public sale in a local newspaper. Plaintiff's belongings were sold at a public sale on an unspecified date in 1986 at which Action was the only bidder. Action's president, Jack Taylor, testified that he thought his company probably bid one dollar for plaintiff's goods and later resold some of the items in Action's used furniture store for about $140.00. Mr. Taylor, however, did not have any documentation of the sale to prove either figure.

Before addressing the merits of defendant's appeal, we first note that defendant has failed to make reference to its assignments of error immediately following each question as required by Rule 28(b)(5) of the N.C. Rules of Appellate Procedure. We, however, deem it appropriate to consider this appeal on its merits pursuant to Rule 2 of the N.C. Rules of Appellate Procedure.

By his second Assignment of Error, defendant argues that the trial court erred in concluding as a matter of law that defendant did not have the right to dispose of plaintiff's property without complying with G.S., Chapter 44A as it pertains to possessory liens on personal property, or G.S. sec. 25-7-201, *et seq.*, the Uniform Commercial Code provision for warehousemen's liens. We believe any right defendant may have had in plaintiff's property is properly analyzed as a warehouseman's lien under Article Seven of the U.C.C. Although we disagree somewhat with the findings of fact and conclusions of law made by the trial court, we agree with the result reached and therefore affirm.

[1] We first note that "[a] party is bound by his pleadings and, unless withdrawn, amended, or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive as against the pleader. He cannot subsequently take a position contradictory to his pleadings." *Davis v. Rigsby*, 261 N.C. 684, 686, 136 S.E.2d 33, 34 (1964). In the instant case, Action stated in its fourth defense and counterclaim (which claim was not pursued on appeal) that "defendant agreed to handle and store the Personal Property of plaintiff for no more than six (6) months and to transport the Personal Property to a location in Monrovia, Liberia." Therefore, Action is bound by the factual allegation in its answer that it agreed to store plaintiff's property, and Action's denial of a storage

TATE v. ACTION MOVING & STORAGE

[95 N.C. App. 541 (1989)]

agreement by Jack Taylor, president of Action, in his deposition, is of no import.

[2] It is well settled that "[a] warehouseman has a lien against the bailor on the goods covered by a warehouse receipt." G.S. sec. 25-7-209(1). The trial court found as fact that Action never issued a warehouse receipt or any document which it intended to serve as one. Action excepted to this finding. We conclude that this finding is unsupported by the evidence.

We first note that a warehouse receipt is defined by the U.C.C. as simply "a receipt issued by a person engaged in the business of storing goods for hire." G.S. sec. 25-1-201(45). Further, "[a] warehouse receipt need not be in any particular form." G.S. sec. 25-7-201. Action's admission in its answer that it agreed to store plaintiff's goods for up to six months supports the contention that the "Household Goods Descriptive Inventory" which was given to plaintiff when his goods were loaded was intended by Action to serve as a warehouse receipt. We also believe it was sufficient to constitute a warehouse receipt for purposes of holding Action responsible under Article Seven for its actions as a warehouseman. This document issued by Action listed each item picked up, its condition, the owner's name, the origin loading address, and was signed and dated by Action's authorized agent and driver. Although we find no North Carolina case directly on point as to whether an irregular document not formally denominated a warehouse receipt may serve as one for purposes of invoking a warehouseman's duties under Article Seven, we find support for our position in *Kearns v. McNeill Bros. Moving & Storage Co.*, 509 A.2d 1132, 1 U.C.C. Rep. Serv.2d 856 (D.C. App. 1986), which held that a "Household Goods Descriptive Inventory" was a sufficient warehouse receipt under similar circumstances.

We find it unnecessary to undertake an analysis of the "Household Goods Descriptive Inventory" in the instant case. Even though the document is probably irregular as a warehouse receipt, this will not relieve defendant of his duties as a warehouseman under Article Seven. G.S. sec. 25-7-401, entitled "Irregularities in issue of receipt or bill or conduct of issuer" states, in pertinent part, the following: "The obligations imposed by this article on an issuer apply to a document of title regardless of the fact that (a) the document may not comply with the requirements of this article or of any other law or regulation regarding its issue, form

or content. . . ." (We note that G.S. sec. 25-1-201(15) defines "document of title" to include warehouse receipts.) White and Summers, in construing this provision, have stated that "so-called 'irregularities of issue' do not limit the scope of Article Seven so far as the *obligations of an issuer* are concerned, even though a specified key definition, such as 'document' or 'warehouseman,' is not satisfied." J. White & R. Summers, Uniform Commercial Code sec. 20-2 at 784 (2d ed. 1980) (emphasis in original).

[3] Therefore, even in the case of an irregular warehouse receipt, defendant had the obligation to act as a reasonably careful person in relation to plaintiff's goods. G.S. sec. 25-7-204(1). Also, in enforcing any lien against plaintiff, defendant had the duty to comply with G.S. sec. 25-7-210, "Enforcement of warehouseman's lien." G.S. sec. 25-7-210(3) provides the following:

> Before any sale pursuant to this section any person claiming a right in the goods may pay the amount necessary to satisfy the lien and the reasonable expenses incurred under this section. In that event the goods must not be sold, but must be retained by the warehouseman subject to the terms of the receipt and this article.

The record shows, as quoted above, that on 24 October 1984 plaintiff wrote a letter to defendant instructing defendant to deduct from the $4,800.00 which defendant was holding, $2,708.20 to cover defendant's charges to date, and that plaintiff would arrange to have a different carrier pick up his goods from defendant. Defendant admitted receiving this letter. In its letter of 29 October 1984, defendant stated that the charges incurred thus far for storage and origin charges amounted to $2,010.70 ($709.80 storage plus $1,300.90 origin charges). Therefore, plaintiff's offer of $2,708.20 was far more than adequate to cover the amount owed to defendant.

Defendant's president, Jack Taylor, was questioned in his deposition about plaintiff's letter of 24 October 1984:

> Q. But you remember getting this letter? And I'll represent to you that I've been furnished with a copy from your attorney, so it was in your file.

> A. I don't remember when I got it. I remember reading it, but, yes, I remember reading it. I don't remember when I got it.

Q. And it contains the language that I just read to you?

A. Yes.

Q. And you still refused to do that at that time?

A. We didn't ship his goods.

Q. You didn't deduct the amount that he said you could and release his goods so he could make other arrangements for shipment, did you?

A. Huh-uh (no), I did not. We returned the entire amount of money to him.

Q. Months later?

A. (Witness nods head affirmatively.)

Defendant's admission by Jack Taylor that he refused to accept payment by plaintiff, but instead continued to hold the goods, mounting up storage fees, was a clear violation of G.S. sec. 25-7-210(3). Plaintiff effectively satisfied the lien on his goods by giving defendant $4,800.00 and instructing him to take out of that amount even more than defendant needed to satisfy the debt. After this payment, defendant then had no right to sell the goods.

G.S. sec. 25-7-210(9) states that "[t]he warehouseman is liable for damages caused by failure to comply with the requirements for sale under this section and in case of willful violation is liable for conversion." We believe defendant's failure to comply with the requirements of G.S. sec. 25-7-210(3) as stated above, constituted a willful violation of the requirements for sale and that the defendant was properly held liable for conversion of plaintiff's goods.

[4] Lastly, we find no merit to Action's contentions that plaintiff abandoned his goods after six months through his contractual provision with Action, and that the clause should be viewed as a liquidated damages provision. The trial court found that the six month provision was a forfeiture clause that was void and against public policy. We agree with the court.

> *Liquidated damages* are a sum which a party to a contract agrees to pay or a deposit which he agrees to forfeit, if he breaks some promise, and which, having been arrived at by a good-faith effort to estimate in advance the actual damage which would probably ensue from the breach, are legally re-

coverable or retainable . . . if the breach occurs. A *penalty* is a sum which a party similarly agrees to pay or forfeit . . . but which is fixed, not as a pre-estimate of probable actual damages, but as a *punishment*, the threat of which is designed to prevent the breach, or as *security* . . . to insure that the person injured shall collect his actual damages.

*Kinston v. Suddreth*, 266 N.C. 618, 620, 146 S.E.2d 660, 662 (emphasis in original) (1966), *quoting* McCormick, Damages sec. 146 (1935). Penalty clauses are unenforceable, while liquidated damages may be collected. *Id.*

The agreement in the instant case which stated that if plaintiff left his property with Action for more than six months it would become Action's property is a penalty clause, not a liquidated damages clause, and as such, is unenforceable. The clause states no fixed sum and there is no showing that the value of plaintiff's belongings was in any way related to any genuine pre-estimate of what Action's damages would be in case of a breach by plaintiff. The provision is in the nature of security for actual damages and cannot be enforced.

We find defendant's remaining arguments to be without merit and therefore we do not address them.

Affirmed.

Judges BECTON and ORR concur.