IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-106

No. 382A20

Filed 24 September 2021

IN THE MATTER OF: D.T.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 5 June 2020 by the Honorable L. Walter Mills in District Court, Carteret County. This matter was calendared for argument in the Supreme Court on 19 August 2021, but was determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Mark L. Hayes for petitioner-appellees.*

*Richard Croutharmel for respondent-appellant father.*

ERVIN, Justice.

Respondent-father Thomas H. appeals from a trial court order terminating his parental rights in the minor child D.T.H.[1] After careful review of respondent-father's challenges to the trial court's termination order in light of the record and the applicable law, we hold that the legally valid findings of fact contained in the trial court's termination order do not suffice to support a conclusion that respondent-father's parental rights in David were subject to termination. As a result, we reverse

[1] D.T.H. will be referred to throughout the remainder of this opinion as David, which is a pseudonym used for ease of reading and to protect the identity of the juvenile.

the trial court's termination order and remand this case to the District Court, Carteret County, for further proceedings, including the making of new findings of fact and conclusions of law with respect to the issue of whether respondent-father's parental rights in David were subject to termination on the basis of neglect by abandonment, N.C.G.S. § 7B-1111(a)(1), or abandonment, N.C.G.S. § 7B-1111(a)(7).

## I. Factual Background

David was born in Craven County in March 2007 to respondent-father and the mother Brandi C. Although respondent-father and the mother married in July 2007, they separated during the following August. After the parents separated, the mother and David resided with David's maternal grandparents, who are the petitioners in this case. On 8 September 2008, the mother filed a complaint against respondent-father seeking a divorce from bed and board, custody, and child support. Following the maternal grandparents' decision to intervene in this proceeding for the purpose of seeking to have David placed in their custody, respondent-father filed an answer in which he stated that neither he nor the mother should have custody of David. On 15 April 2010, Judge Cheryl L. Spencer entered a temporary order determining that the mother was unable to care for David on her own, that the maternal grandparents had "insured [David's] well-being and safety," that neither parent should be awarded custody of David at that time, and that it was not in "the best interest of the minor child that [either parent] have visitation, except as agreed upon by [the maternal

grandparents], and [the mother] or [respondent-father]." As a result, Judge Spencer concluded that the maternal grandparents "[we]re fit and proper persons for the temporary sole care, custody, and control of the minor child" and placed David in their custody.

¶ 3        On 20 September 2011, the trial court entered an order finding that Judge Spencer's temporary order had remained unmodified since its entry and concluding that it was in David's best interests that the temporary order become permanent. In light of those determinations, the trial court awarded the maternal grandparents "permanent sole care, custody and control, and the residential placement of the minor child" and allowed the parents to visit with him "only at such times, places, and under such conditions, as agreed upon specifically by [the maternal grandparents], and [the mother] or [respondent-father]."

¶ 4        In 2011, the maternal grandmother obtained overseas employment with the Department of Defense and was eventually stationed in Japan. Following the maternal grandfather's retirement from his own employment a few months later, he and David joined the maternal grandmother in Japan in 2013. After David had resided in Japan for three years, the maternal grandparents moved, with David, to Bahrain in 2016 and to Kaiserslautern, Germany, in 2018.

¶ 5        On 20 July 2018, the maternal grandparents filed a petition seeking to have respondent-father's parental rights in David terminated on the basis of neglect,

N.C.G.S. § 7B-1111(a)(1); dependency, N.C.G.S. § 7B-1111(a)(6); abandonment, N.C.G.S. § 7B-1111(a)(7); and the fact that respondent-father had voluntarily relinquished his parental rights in another juvenile and lacked the ability or willingness to establish a safe home, N.C.G.S. § 7B-1111(a)(9).[2] After a guardian ad litem was appointed in this proceeding, she conducted interviews with each of the parties between November 2018 and July 2019 and submitted a dispositional report that was dated 22 January 2019 and amended on 29 July 2019 in which she recommended that the maternal grandparents' termination petition be denied. On 18 February and 29 July 2019, the trial court conducted a hearing for the purpose of addressing the issues raised by the termination petition at which testimony was received from the maternal grandfather, respondent-father, the mother, the paternal grandmother, the paternal grandfather, and the guardian ad litem. On 5 June 2020, the trial court entered an order determining that respondent-father's parental rights in David were subject to termination on the basis of neglect, N.C.G.S. § 7B-1111(a)(1); dependency, N.C.G.S. § 7B-1111(a)(6); and abandonment, N.C.G.S. § 7B-1111(a)(7), and that it would be in David's best interests for respondent-father's parental rights

---

[2] On 9 August 2018, the maternal grandparents filed a petition seeking to have the mother's parental rights in David terminated on the basis of neglect, N.C.G.S. § 7B-1111(a)(1); dependency, N.C.G.S. § 7B-1111(a)(6); and abandonment, N.C.G.S. § 7B-1111(a)(7). After the mother admitted that her parental rights in David were subject to termination on the basis of dependency, N.C.G.S. § 7B-1111(a)(6), the trial court entered an order on 16 January 2020 terminating the mother's parental rights in David. In view of the fact that the mother did not appeal from the trial court's termination order, we will refrain from discussing the proceedings against the mother any further in this opinion.

to be terminated, N.C.G.S. § 7B-1110(a) (2019).  Respondent-father noted an appeal

to this Court from the trial court's termination order.

## II.  Substantive Legal Analysis

### A.  Standard of Review

In seeking relief from the trial court's termination order before this court,

respondent-father contends that several of the trial court's findings of fact are legally

deficient and that the trial court had erred by concluding that his parental rights in

David were subject to termination.  According to well-established North Carolina law,

a termination of parental rights proceeding involves the use of a two-step process

consisting of an adjudicatory hearing and a dispositional hearing.  N.C.G.S. §§ 7B-

1109, -1110 (2019).  At the adjudicatory hearing, at which the petitioner or movant

bears the burden of proof, N.C.G.S. § 7B-1110(f), the trial court, sitting without a jury,

hears the evidence and makes findings of fact in the course of determining whether

any of the grounds for termination enumerated in N.C.G.S. § 7B-1111(a) exist.  In the

event that the trial court finds the existence of one or more of the statutory grounds

for termination enumerated in N.C.G.S. § 7B-1111(a), it is required to "determine

whether terminating the parent's rights is in the juvenile's best interest."  *Id.*

§ 1110(a). This Court reviews a trial court's adjudication order "to determine whether

the findings are supported by clear, cogent and convincing evidence and the findings

support the conclusions of law," *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re*

*Montgomery*, 311 N.C. 101, 111 (1984)), with "[u]nchallenged findings of fact made at the adjudicatory stage [being] binding on appeal," *In re D.W.P.*, 373 N.C. 327, 330 (2020) (citing *Koufman v. Koufman*, 330 N.C. 93, 97 (1991)), and with "the trial court's conclusions of law [being] subject to de novo review on appeal." *In re N.D.A.*, 373 N.C. 71, 74 (2019) (citing *In re S.N.*, 194 N.C. App. 142, 146 (2008), *aff'd per curiam*, 363 N.C. 368 (2009)).

## B. Findings of Fact

In its termination order, the trial court found as fact that:

> 9.      The [maternal grandfather] testified that the juvenile has resided with the [maternal grandparents] since April 2010.   [Respondent-father] has had no significant contact with the juvenile for the last eight full years.   [Respondent-father] has not provided significant support for the juvenile for over eight years.  The [maternal grandparents] further testified that the juvenile is a healthy and happy child.
>
> 10.      [Respondent-father] has had no relationship with the juvenile, and the juvenile does not have a significant relationship with [respondent-father].
>
> 11.      [Respondent-father] testified, as follows:
>
> a.      [Respondent-father] does not pay his child support.  His child support obligation is paid by his father.  He has not worked for the last year and a half.
>
> b.      [Respondent-father] has not made any effort to contact the juvenile.

> c.      [Respondent-father], in his testimony, referred to himself as being on a "path of destruction."
>
> d.      [Respondent-father] has no vehicle, no driver's license, no place of his own, and no job. [Respondent-father] resides with his girlfriend and testified that he currently pays no household bills and has applied for disability due to an injury to his right arm.
>
> . . . .
>
> g.      [Respondent-father] never tried to enforce his court-ordered visitation.
>
> h.      Based upon the evidence presented and in light of the long pattern of past behavior, [respondent-father] does not have the capability of maintaining a relationship with the juvenile, nor does he have the ability to care for the juvenile.

¶ 8        As an initial matter, respondent-father argues that the trial court erred by stating in Finding of Fact No. 9 that he had had no significant contact with David for eight years on the grounds that "[he had] had plenty of contact with David over the years despite [the maternal grandparents'] attempts to prevent it." In evaluating the validity of this aspect of respondent-father's challenge to Finding of Fact No. 9, we begin by noting that, at an absolute minimum, the first and last sentences contained in Finding of Fact No. 9, which state that the maternal grandfather "testified that the juvenile has resided with the [maternal grandparents] since April 2010" and that the maternal grandparents had "further testified that the juvenile is a healthy and

happy child," take the form of recitations of the testimony that was provided at the termination hearing by the maternal grandfather rather than proper findings of fact. *See* N.C. Gen. Stat. § 1A-1, Rule 52 (2019) (providing that, "[i]n all actions tried upon the facts without a jury . . . , the court shall find the facts specially . . . ."); *In re N.D.A.*, 373 N.C. at 75 (stating that "recitations of the testimony of each witness do not constitute findings of fact by the trial judge" (cleaned up); *In re Green*, 67 N.C. App. 501, 505 n.1 (1984) (observing that, where findings of fact began with the phrase the witness " 'testified under oath . . . ,' and continue[d] to merely restate the content of that testimony[,] . . . [s]uch verbatim recitations *did not* constitute *findings of fact* by the trial judge, because they do not reflect a conscious choice between the conflicting versions of the incident in question which emerged from all the evidence presented"). Although the factual accuracy of the assertions contained in the relevant portion of the termination order has not been challenged before this Court, we are unable to determine whether the other two sentences in Finding of Fact No. 9, which relate to evidence that was in serious dispute during the termination hearing, consist of a recitation of the testimony received at the termination hearing or actual factual determinations by the trial court. As a result, given our inability to determine whether the contents of Finding of Fact No. 9, taken in its entirety, represent a factual determination by the trial court rather than the mere recitation of the maternal grandfather's testimony, we are compelled to disregard Finding of Fact No.

in determining whether the trial court's findings of fact adequately support its determination that respondent-father's parental rights in David were subject to termination. *In re N.D.A.*, 373 N.C. at 75 (disregarding a finding of fact in the course of determining whether the trial court properly found that the parent's parental rights were subject to termination on the grounds that the finding in question simply recited the testimony of a particular witness without indicating that the testimony was credible).

¶ 9 In challenging Finding of Fact No. 10, in which the trial court found that respondent-father "has had no relationship with the juvenile" and that "the juvenile does not have a significant relationship with the [r]espondent-[f]ather," respondent-father argues that the record evidence does, in fact, show that he had a relationship with his son. In support of this contention, respondent-father directs our attention to testimony that was delivered by the guardian ad litem at the dispositional phase of the proceeding. In our view, evidence that has been received at the dispositional phase of a termination of parental rights proceeding may not be considered in evaluating the determinations that the trial court made at the adjudicatory phase of that proceeding, given that, while the rules of evidence applicable to civil cases apply during adjudicatory proceedings, *see* N.C.G.S. § 7B-1109(f), evidence is admissible during dispositional proceedings as long as that evidence is "relevant, reliable, and necessary to determine the best interests of the juvenile," N.C.G.S. § 7B-1110(a); *see*

*also In re R.D.*, 376 N.C. 244, 250 (2020). As a result, we will refrain from relying upon the dispositional testimony in evaluating the validity of respondent-father's challenge to Finding of Fact No. 10[3].

At the adjudication phase of the termination proceeding, the guardian ad litem testified that "[David] spoke very highly of spending time with his father, that he enjoyed spending time with both of his parents, actually, and that he wished he could spend more time with them." In addition, respondent-father testified that, during the eight year period preceding the termination hearing, he had sent David a card and "a couple of games"; that the maternal grandparents had never let him know when they were coming back to the United States; that the interactions that he had had with David during visits arranged by paternal grandparents were "[v]ery short and brief"; that, during a Skype call between the paternal grandmother and David that occurred during 2013, respondent-father had been "in the background"; and that, during an in-person visit that the paternal grandfather had had with David in 2017, respondent-father had stopped by to visit with David. Moreover, respondent-father

---

[3] Although we note that the trial court took judicial notice of the guardian ad litem's report during the adjudication hearing, it is not clear to us that this decision was consistent with the applicable rules of evidence. *Cf. Dowdy v. S. Ry. Co.*, 237 N.C. 519, 526 (1953) (stating that "[c]ourts take judicial notice of subjects and facts of common and general knowledge"). In view of the fact that the parties have not adequately addressed the extent, if any, to which the trial court properly took judicial notice of this report or the impact of the contents of this report upon the proper resolution of the issue discussed in this portion of our opinion, we will refrain from resolving this aspect of respondent-father's challenge to the trial court's termination order on the basis of an analysis of the information contained in the guardian ad litem's report.

claimed to have attempted to communicate directly with David following the 2017 visit using a cell phone and that the application that he had used to contact David had been deleted from David's phone.

After carefully examining the materials presented for our consideration on appeal, we are satisfied that the record contains evidence tending to show that respondent-father continued to have contact with David during the years leading up to the termination hearing. On the other hand, the record also contains evidence tending to suggest that the level of contact that respondent-father had with David during the eight years immediately preceding the termination hearing was sporadic and brief. For that reason, even though the evidence concerning the nature and extent of respondent-father's relationship with David is conflicting, we conclude that the record does contain evidence tending to show that respondent-father "has had no relationship with the juvenile, and the juvenile does not have a significant relationship with the [r]espondent-[f]ather." *See Knutton v. Cofield*, 273 N.C. 355, 359 (1968) (stating that the trial court "passes upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom" and that, "[i]f different inferences may be drawn from the evidence," the trial court "determines which inferences shall be drawn and which shall be rejected"); *c.f., e.g., In re D.J.D.*, 171 N.C. App. 230, 240 (2005) (upholding the trial court's finding that there was no real relationship between the children and their father given the

existence of record evidence tending to show a lack of contact between the children and their father during the five years that the children had been in foster care). As a result, we hold that the trial court did not err by making Finding of Fact No. 10.

¶ 12    Next, respondent-father challenges Finding of Fact Nos. 11(a), 11(b), 11(c), and 11(h).[4]  More specifically, respondent-father argues that Finding of Fact No. 11(a), which states that respondent-father testified that he "does not pay his child support," that "[h]is child support obligation is paid by his father," and that "[h]e has not worked for the last year and a half," is irrelevant to the matters at issue before the Court in this proceeding given that "the child support still got paid and it was [r]espondent-[f]ather that made that happen."  Respondent-father testified at the termination hearing that he had "three crushed [discs] in [his] neck, and three crushed [discs] in [his] back, and [had] los[t] half of [the] use of [his] right arm" and that he had been working with a physical therapist in the hope that he could recover sufficiently to return to work.  In addition, the paternal grandfather testified that respondent-father had been helping the paternal grandmother around the house and

---

[4] As an aside, we note that, in Finding of Fact No. 11, the trial court described each of the eight subparts contained in that finding as a statement made by respondent-father.  For that reason, each of the eight subparts of Finding of Fact No. 11 is subject to being disregarded as a recitation of witness testimony in accordance with the legal principles enunciated earlier in this opinion.  *See In re N.D.A.*, 373 N.C. at 75.  However, given that respondent-father did not challenge those subparts of Finding of Fact No. 11 that are not discussed in the text of this opinion in his brief before this Court, we conclude that respondent-father has waived his right to object to their consideration in our determination of whether the trial court erred by concluding that his parental rights in David were subject to termination.

that he had been paying respondent-father's child support obligation "somewhat tit for tat[.]" In view of the fact that Finding of Fact No. 11(a) is couched in terms of a recitation of respondent-father's testimony and fails to resolve the issue of whether the paternal grandfather's decision to make respondent-father's child support payments should be treated as sufficient compliance with respondent-father's child support obligation, we conclude that Finding of Fact No. 11(a) should be disregarded in determining whether the trial court's findings of fact support its conclusion of law that respondent-father's parental rights in David were subject to termination. *See In re N.D.A.*, 373 N.C. at 75.

¶ 13      In challenging Finding of Fact No. 11(b), which states that respondent-father had testified that he had "not made any effort to contact the juvenile," respondent-father asserts that the record contains evidence tending to show that he had contacted David over the years leading up to the termination hearing despite the efforts that the maternal grandparents had made to prevent him from being in touch with his son. As we have already noted, the record contains evidence tending to show that, over the eight year period leading up to the termination hearing, respondent-father had sent David a card and a couple of games and that respondent-father had not initiated legal proceedings to obtain custody of David or the right to visit with him. Thus, the record, as we have already noted, contains evidence tending to show

that respondent-father had had limited contact with David in the interval before the maternal grandparents sought to terminate his parental rights in the child.

¶ 14      On the other hand, the record also reflects that the only contact between respondent-father and David that had occurred while David lived abroad had happened in 2013 and in 2017 during visits that had been arranged so as to permit David to have contact with the paternal grandparents. In addition, the record contains evidence tending to show that the maternal grandfather denied any memory of having provided respondent-father with the maternal grandparents' address, phone number, or e-mail address at the time that they took David abroad. Although the maternal grandfather did give the relevant contact information to the paternal grandparents, the paternal grandmother testified that, when the maternal grandparents lived in Japan and Bahrain, she did not provide their addresses to respondent-father given that the maternal grandfather "was very protective of the information he gave, and [she] didn't want to cross the line by giving it to [respondent-father]." Furthermore, respondent-father testified that he had attempted to contact the maternal grandparents using phone numbers acquired from the mother and Facebook without success and that he had attempted to communicate with the minor child using a cell phone application until that application had been deleted from David's cell phone. As a result, the record also contains evidence tending to show

that the maternal grandparents placed obstacles in the path of any attempts that respondent-father might have made to have contact with David.

¶ 15        In view of the fact that Finding of Fact No. 11(b) consisted of nothing more than a recitation of respondent-father's testimony, it is not, in actuality, a finding of fact at all.  *See In re N.D.A.*, 373 N.C. at 75; *Knutton*, 273 N.C. at 359.  While the record contains conflicting evidence concerning the nature and extent of respondent-father's attempts to contact David and the extent to which the maternal grandparents successfully interposed obstacles to any efforts that respondent-father might have made to contact his son, it is not the role of this Court, rather than the trial court, to resolve such disputed factual issues.  *See generally In re B.G.*, 197 N.C. App. 570, 574 (2009) (stating that, "[a]lthough there may be evidence in the record to support a finding that Respondent acted inconsistently with his custodial rights, it is not the duty of this Court to issue findings of fact").  As a result of the fact that the challenged trial court finding fails to resolve a material conflict in the evidence, we will disregard Finding of Fact No. 11(b) in evaluating whether the trial court's findings of fact support its conclusion that respondent-father's parental rights in David were subject to termination.

¶ 16        Similarly, respondent-father challenges Finding of Fact No. 11(c), which states that respondent-father testified that he was "on a 'path of destruction'" on the grounds that, when taken in context, the statement referred to in this finding

described the conduct in which he had engaged at the time that he surrendered custody of David to the maternal grandparents rather than his current situation. At the termination hearing, respondent-father testified on direct examination that:

> A.    After my son was born, yes, I hit a path of self[-]destruction there for a little bit, but I picked myself back up.
>
> . . . .
>
> Q.    How long did your path of destruction last?
>
> A.    I would say well into two to three years.
>
> Q.    Okay. Into at least 2014; is that correct?
>
> A.    Yes.

Aside from the fact that, as respondent-father notes, he made the "path of destruction" comment in the course of describing the situation in which he found himself years before the termination hearing, Finding of Fact No. 11(c) is, once more, nothing more than a recitation of witness testimony rather than a genuine finding of fact. *See In re N.D.A.*, 373 N.C. at 75; *Knutton*, 273 N.C. at 359. As a result, we will disregard Finding of Fact No. 11(c) in determining whether the trial court's findings of fact support its determination that respondent-father's parental rights in David were subject to termination.

¶ 17    Finally, even though the trial court introduced Finding of Fact No. 11(h) by stating that "[t]he Respondent-Father testified, as follows," the remainder of that

finding states the trial court's determination that, "[b]ased upon the evidence presented and in light of the long pattern of past behavior, [respondent-father] does not have the capability of maintaining a relationship with [David], nor does he have the ability to care for [David]." In our view, the most reasonable reading of Finding of Fact No. 11(h) is that it, unlike Finding of Fact Nos. 11(a), 11(b), and 11(c), is, in actuality, an attempt by the trial court to summarize the evidence upon which its termination decision was based rather than a mere recitation of respondent-father's testimony at the termination hearing. As a result, we will consider Finding of Fact No. 11(h) in determining whether the trial court's findings support its decision that respondent-father's parental rights in David were subject to termination.

**C. Grounds for Termination of Parental Rights**

In additional to challenging a number of the trial court's findings of fact, respondent-father argues that the trial court erred by determining that his parental rights in David were subject to termination on the basis of neglect, N.C.G.S. § 7B-1111(a)(1); dependency, N.C.G.S. § 7B-1111(a)(6); and abandonment, N.C.G.S. § 7B-1111(a)(7). In support of these determinations, the trial court concluded as a matter of law that:

> 3. Here, as stated in the Petition, the alleged grounds to support termination are [N.C.G.S. §] 7B-1111(a)(1), (6), and (7) or neglect, dependency, and willful abandonment. As case law explains, the definition of a neglected juvenile includes a juvenile who has been abandoned: N.C.G.S. 7B-101(15). Neglect in the form of

abandonment does not require findings regarding the six-month period immediately preceding the filing of the petition as does the separate ground of abandonment under N.C.G.S. 7B-1111(a)(7). The [c]ourt may examine the parent's conduct over an extended period of time. *In Re: Humphrey*, 156 [N.C. App 533], (2003).

    4.    Grounds exist at N.C.G.S. 7B-1111(a)(1), 7B-1111(a)(6), and 7B-1111(a)(7) in which to terminate the parental rights of [respondent-father] as it applies to the juvenile, in that [respondent-father] has neglected the juvenile, [respondent-father] has abandoned the juvenile, and [respondent-father] is incapable of providing for the proper care and supervision of the juvenile.

## 1. Neglect

¶ 19    According to N.C.G.S. § 7B-1111(a)(1), a trial court is entitled to determine that a parent's parental rights in a child are subject to termination on the basis of neglect if that child's "parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline"; or if the child "has been abandoned." N.C.G.S. § 7B-101(15). In determining whether a parent's parental rights in a child are subject to termination on the basis of neglect, the parent's fitness to care for his or her child must be determined as of the date of the termination hearing, an event that is frequently held after the child has been removed from the parent's custody. *In re Ballard*, 311 N.C. 708, 714 (1984). For that reason, in evaluating whether the neglect ground for termination exists, the "trial court must consider evidence of changed conditions . . . in light of the history of neglect by the parents and the probability of a repetition of neglect." *Id.* (quoting *In re Wardship of Bender*, 170 Ind. App. 274, 285

(1976)). On the other hand, however, "this Court has recognized that the neglect ground can support termination without use of the two-part *Ballard* test if a parent is presently neglecting their child by abandonment." *In re K.C.T.*, 375 N.C. 592, 599–600 (2020) (citing *In re N.D.A.*, 373 N.C. at 81–82); *see also In re W.K.*, 376 N.C. 269, 274 n.5 (2020) (stating that "N.C.G.S. § 7B-1111(a)(1) does not require a showing of past neglect if the petitioner can show current neglect as defined in N.C.G.S. § 7B-101(15).").

¶ 20   In determining whether a parent has neglected his or her child by abandonment for purposes of N.C.G.S. § 7B-1111(a)(1), the relevant time period "is not limited to the six consecutive months immediately preceding the filing of the termination petition," *In re N.D.A.*, 373 N.C. at 81 (citing *In re Humphrey*, 156 N.C. App. 533, 541 (2003)), as is the case in the event that the parent's parental rights are allegedly subject to termination on the grounds of willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7). "A trial court is entitled to terminate a parent's parental rights in a child for neglect based upon abandonment pursuant to N.C.G.S. § 7B-1111(a)(1) in the event that the trial court finds that the parent's conduct demonstrates a 'wilful neglect and refusal to perform the natural and legal obligations of parental care and support.' " *In re N.D.A.*, 373 N.C. at 81 (quoting *Pratt v. Bishop*, 257 N.C. 486, 501 (1962)). For that reason, "[i]n order to terminate a parent's rights on the ground of neglect by abandonment, the trial court must make

findings that the parent has engaged in conduct 'which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child' as of the time of the termination hearing." *Id.* (quoting *In re C.K.C.*, 263 N.C. App. 148, 164 (2018)); *see also Pratt*, 257 N.C. at 501) (describing "willful intent" as an integral part of a court's consideration of abandonment and a question of fact to be determined from the evidence). According to respondent-father, the trial court's findings of fact fail to demonstrate that his parental rights in David were subject to termination on the basis of neglect given the trial court's failure to find a probability of future neglect.

¶ 21        Although respondent-father is correct in pointing out that the trial court failed to find that David was likely to be neglected in the future in the event that he was returned to respondent-father's care, this argument overlooks the fact that the trial court's determination that respondent-father's parental rights were subject to termination on the basis of neglect did not rest upon a legal theory that would have made such a finding necessary. Instead, the trial court's finding of neglect rested upon a theory of neglect by abandonment, which requires no such finding. As a result, this particular aspect of respondent-father's challenge to the trial court's determination that his parental rights were subject to termination on the basis of neglect lacks merit. Our decision to this effect does not, however, end our inquiry

into the trial court's determination that respondent-father's parental rights in David were subject to termination on the basis of neglect by abandonment.

In the course of concluding that respondent-father's parental rights in David were subject to termination on the basis of neglect by abandonment, the trial court found as a fact that:

> 10.    [Respondent-father] has had no relationship with the juvenile, and the juvenile does not have a significant relationship with [respondent-father].
>
> 11.    [Respondent-father] testified, as follows:
>
> . . . .
>
>> g.    [Respondent-father] never tried to enforce his court-ordered visitation.
>>
>> h.    Based upon the evidence presented and in light of the long pattern of past behavior, [respondent-father] does not have the capability of maintaining a relationship with the juvenile, nor does he have the ability to care for the juvenile.

As a result, the trial court's unchallenged and properly supported findings of fact reflect that respondent-father did not have a signification relationship with David; that respondent-father had not "filed any type of action to get either custody, or to visit [David], or modify visitation"; and that respondent-father "does not have the capability of maintaining a relationship with" David or "the ability to care for" David. We are unable to conclude that these findings, without more, suffice to support a

determination that respondent-father's parental rights in David were subject to termination on the basis of neglect by abandonment.

¶ 23        In light of the conflicting evidence received at the termination hearing, the trial court had the obligation to resolve a substantial factual dispute over the extent to which respondent-father had had contact with David and the extent to which the limited relationship that respondent-father had been able to sustain with David stemmed from interference by the maternal grandparents rather than from respondent-father's action or inaction in order to determine whether respondent-father "manifest[ed] a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. 244, 252 (1997) (holding that the trial court's findings failed to support a conclusion that the parent willfully abandoned the child in view of its failure to address the "probable hostile relationship" between the respondent and the members of petitioners' family who cared for the child and the parent's ability to contact the minor child) (quoting *In re Adoption of Searle*, 82 N.C. App. 273, 275 (1986)); *see also In re N.D.A.*, 373 N.C. at 82 (stating that "the trial court failed to make any findings of fact regarding whether respondent-father had the ability to contact petitioner and [the minor child,]" with "such findings being necessary in order for the trial court to make a valid determination regarding the extent to which respondent-father's failure to contact [the minor child] and petitioner from 2014 through December 2016 was willful"). The

trial court's findings simply do not resolve the conflict in the evidence that is reflected in the record. As a result, we hold that, even though the record contains evidence from which the trial court might have found, based upon its evaluation of the credibility of various witnesses, that respondent-father had willfully abandoned David, the findings of fact that the trial court actually made fail to support its determination that respondent-father neglected David by abandonment.

### 2. Dependency

According to N.C.G.S. § 7B-1111(a)(6), a trial court may terminate a parent's parental rights in his or her child based upon a finding "[t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future," N.C.G.S. § 7B-1111(a)(6), with N.C.G.S. § 7B-101 defining a "[d]ependent juvenile" as "[a] juvenile in need of assistance or placement because . . . the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C.G.S. § 7B-101(9) (2019). As this Court has recently held, "the trial court's findings regarding [an adjudication of dependency under N.C.G.S. § 7B-1111(a)(6)] 'must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the

parent of alternative child care arrangements.' " *In re K.R.C.*, 374 N.C. 849, 859 (2020) (quoting *In re L.R.S.*, 237 N.C. App. 16, 19 (2014)).

¶ 25        Respondent-father contends that the trial court's determination that his parental rights in David were subject to termination on the basis of dependency lacks sufficient support in the record. More specifically, respondent-father contends that an adjudication of dependency requires a finding that the parent "lacks an alternative child care arrangement," *see* N.C.G.S. § 7B-101(9), with the only finding of fact contained in the trial court's termination order that appears to relate to the dependency ground for termination being Finding of Fact No. 11(h), which states that respondent-father "does not have the capability of maintaining a relationship with [David], nor does he have the ability to care for [David.]"

¶ 26        A careful review of the termination order establishes that the trial court failed to make any findings of fact that address the issue of whether respondent-father lacked an appropriate childcare arrangement. In addition, careful scrutiny of the record satisfies us that the parties did not elicit any evidence that tends to show that respondent-father lacked an appropriate alternative childcare arrangement. *See In re K.C.T.*, 375 N.C. 592, 596 (2020) (reversing a trial court's adjudication of dependency on the grounds that "the burden was on [the] petitioners to show that respondent[ ] lacked a suitable alternative child care arrangement and they presented no evidence to meet their burden."). As a result, we hold that the trial

court's findings of fact and the record evidence do not suffice to support the trial court's conclusion of law that respondent-father's parental rights in David were subject to termination on the basis of dependency.

### 3. Abandonment

¶ 27 According to N.C.G.S. § 7B-1111(a)(7), a parent's parental rights in a child are subject to termination in the event that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C.G.S. § 7B-1111(a)(7) (2019). As we have already noted, "[a]bandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. at 251 (quoting *In re Adoption of Searle*, 82 N.C. App. at 275); *see also In re C.B.C.*, 373 N.C. 16, 19 (2019) (stating that, "[i]f a parent withholds that parent's presence, love, care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." (cleaned up).

¶ 28 According to respondent-father, the trial court's determination that his parental rights in David were subject to termination on the basis of abandonment pursuant to N.C.G.S. § 7B-1111(a)(7) cannot be upheld given the absence of any finding that respondent-father's conduct was willful. In addition, a careful examination of the termination order indicates that the trial court made no findings

of fact concerning respondent-father's conduct during the determinative six month period specified in N.C.G.S. § 7B-1111(a)(7). Finally, as we have previously determined, the trial court's proper findings of fact do not resolve the factual disputes that must be addressed in the course of ascertaining whether respondent-father's conduct demonstrated the existence of a "willful determination [on the part of respondent-father] to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. at 251.[5] As a result, we hold that, even though the record contains evidence from which a finding of abandonment might be found, depending upon the manner in which certain disputed issues of fact were resolved, the trial court erred by failing to make sufficient findings of fact to support a determination that respondent-father's parental rights in David were subject to termination on the basis of abandonment pursuant to N.C.G.S. § 7B-1111(a)(7).

### III. Conclusion

Thus, for the reasons set forth above, we reverse the trial court's termination order on the grounds that the trial court's findings of fact do not support its conclusion that respondent-father's parental rights in David were subject to termination. However, given the existence of evidence that might, if believed, suffice to support a determination that respondent-father's parental rights in David were subject to termination on the basis of either neglect by abandonment, N.C.G.S. § 7B-1111(a)(1),

---

[5] *See* II.C.1. above.

or abandonment, N.C.G.S. § 7B-1111(a)(7), we remand this case to the District Court, Carteret County, for further proceedings not inconsistent with this opinion, including the entry of a new order determining whether respondent-father's parental rights in David were subject to termination on the basis of these two grounds for termination. On the other hand, given the absence of any evidence tending to show that respondent-father lacked an appropriate alternative childcare arrangement for David, the trial court need not, on remand, consider the issue of whether respondent-father's parental rights in David were subject to termination on the basis of dependency, N.C.G.S. § 7B-1111(a)(6). In the exercise of its discretion, the trial court may receive additional evidence on remand if it elects to do so.

REVERSED AND REMANDED.